SMITH v. THE JUNCTION RAILWAY COMPANY.

PRACTICE.—FICTITIOUS SUIT.—A court will not take cognizance of a suit which appears to be fictitious.

SAME.—Affidavits of third parties interested in the questions involved will be heard in the Supreme Court in support of a motion to dismiss the appeal, on the ground that one of the parties to the action is a fictitious person, and that there is no real controversy existing between the parties to the suit.

SAME.—CONTEMPT OF COURT.—Such a proceeding is a punishable contempt of court, and the appeal will be dismissed at the costs of the real party to the action.

APPEAL from the *Union* Circuit Court.

GREGORY, C. J.—On the 2d of *July* an order was entered granting a rehearing, and ruling the appellee to show cause

on the 25th of *August* why the appeal should not be dismissed. This order was founded on a petition supported by affidavits filed by *James Smith*, who was then supposed to be the appellant, and *Phineas M. Kent*, and the official certificates of the clerk and recorder of *Union* county, showing that the suit is a fiction, and intended to affect a real litigation now pending in the *Tippecanoe* Circuit Court between *Kent* and the railroad company.

The appellee filed the following answer: "Notice having been served on the appellee, by order of this court, to show cause why the said opinion of the court ought not to be withdrawn and the case dismissed at the cost of the appellee, it becomes necessary for her to show to the court the true nature of this case; and also the great importance of the same, and why the said judgment of this court should not be disturbed.

"The *Junction Railroad Company* is a corporate body, created by special charter of the General Assembly of *Indiana*, during the year 1848, and was organized and is still acting under the same, and amendments thereto. In 1853 the *Ohio and Indiana Railroad Company* became a corporation under the general railroad laws of *Indiana*, and afterwards was merged into the *Junction Railroad Company*, under and by virtue of articles of agreement between the companies, under the general laws of *Indiana*, authorizing the same. The whole line of road extended from *Indianapolis*, in the State of *Indiana*, to *Hamilton*, in the State of *Ohio*, a distance of almost one hundred miles. The original amount of the capital stock of the first named company was only $250,000, but by the ninth section of the special charter, power was given to increase this capital stock to any amount necessary to construct and complete the road; but the mode and manner in which this increase was to be made is not prescribed. The special charter of the *Junction Railroad Company* authorized the receiving of subscriptions in real estate, materials and labor, as well as money, and from time to time subscriptions were received from sundry per-

sons to the capital stock of the company, by the verbal consent of the directors, and certificates issued therefor, by the president and secretary, to an amount greater than the declared original stock of the company; these subscriptions were almost always reported and passed on by the directors, at the meetings of the board, but sometimes no note or memorandum was placed on the order book of the company. Among the parties subscribing for and receiving the stock of the company in this way were *Kent, Willard & Reynolds,* and *Eben B. Reeder,* the last of whom was a contractor on the road, and received a large amount of stock and real estate, in payment of his work and labor estimates. Some years after the sale and transfer of the real estate thus received for stock by Mr. *Reeder,* several suits were brought against the company to recover back the lands conveyed to the company, and sold by it to said *Reeder,* the chief part of which have been settled, except that contracted for with *Kent, Willard & Reynolds,* and a few others; but as the suits of *Kent,* and *Willard & Reynolds,* commenced in 1859, still remained undetermined, the land which Reeder had received from the company in payment of estimates for work and labor became unsaleable and unprofitable to him, on account of the title being attacked by Mr. *Kent,* and charges made against the company of fraud and want of power to issue the capital stock; that the said *Eben B. Reeder,* for the purpose of testing the title of these lands, and the power of the said company to issue the capital stock, threatened to bring suit against the company, and those claiming the lands, in the Circuit Court of the *United States* at *Indianapolis,* he being a citizen of *Ohio.*

"After various conferences with the company, the said *Reeder,* at the suggestion of the company, concluded to make a test case in the state courts, in order to settle the question of the validity of the issuing of the capital stock, as the greater part of his stock was issued to him when contractor, and before he became a director of the company. The suits of

*Kent*, and *Willard & Reynolds* had been commenced in 1859, and had been continued from term to term, under the care and management of Messrs. *John Wood, Samuel W. Parker* and Colonel *Mace*, all of whom died during their pendency. The complaint of *Willard & Reynolds* had been dismissed, and the suit of *Kent* been amended from time to time, presenting four distinct issues, one of which touched the validity of the issue of stock of the company, and although the company had frequently sent her officers to *Lafayette* to have the issues closed and a trial had, from some cause or other the said issues remain open and the cause still pending. It was finally agreed, during the last year, by and between the company and Mr. *Reeder*, to have the suit brought by Mr. *Reeder* in the state courts of *Indiana*, to test the question, and this alone, and the judge of the fourth judicial circuit was consulted whether he would have an argument in chambers on this question, in order to prepare a case for the Supreme Court. The judge saw nothing wrong in the proceeding, and suit was instituted in the name of *James Smith*, as plaintiff, without the least reference to any one; Mr. *Reeder* consenting and agreeing to abide the result. General *Bennett* was consulted in behalf of the plaintiff, and Messrs. *Reid* and *Claypool* for the defendant, and an issue was framed so as to meet this question, on a state of facts existing between the parties and the company, in order to obtain, fairly and honestly, an opinion on the legality and validity of these issues of stock, and for no other purpose.

"A full and fair hearing was had before the judge of said circuit on the complaint, answer and demurrer, and judgment given on the same; an appeal was taken to your Honors, and there, before your honorable court, the cause was fairly stated, and fair and full briefs were filed, each doing his best to sustain his points. These briefs we now append, to show the earnestness and zeal of each party to present fairly and fully the strong points in the case."

In support of this answer, the appellee filed the affidavits of *Eben B. Reeder*, *Jonathan M. Ridenour* and *Thomas W. Bennett*, and a letter from *J. M. Wilson*, judge of the fourth circuit. *Ridenour* says that " the using of the name of *James Smith*, instead of *Eben B. Reeder*, was more by accident than anything else." *Bennett* says that " he was, on or about the —— day of ————, 1867, informed by the secretary of the *Junction Railroad Company*, that said company, and divers persons interested therein, were desirous of testing the question of the validity of the issue of certain certificates of stock issued by said company, and that an agreed case was to be submitted to the judge of the circuit court of said county, for decision, and that said secretary asked him to appear as counsel for the plaintiff, who was to be merely a fictitious person; that the affiant consented to do so." Judge *Wilson's* letter shows that the case was, by agreement, submitted to him in vacation, while he was at *Lawrenceburgh*, in *Dearborn* county ; that he returned the paper, stating that he thought the answer sufficient; that he had no knowledge but that the case was real, and designed to settle, in good faith, the controversies between the parties.

The record, the affidavits, certificates and letter, show that *James Smith* is a fictitious person; that there never was any such transaction as charged in the complaint; that *Bennett*, who appeared for the appellant in this court, was retained by the railroad company; that the interests of *Reeder* and the company are not antagonistic; that the litigation was intended to settle a question involved in a real suit by *Kent* against the appellee ; that the case was submitted to the judge in vacation, at a place outside of *Union* county ; that in fact there is no such judgment or record in the *Union* Circuit Court.

It is not often that such a case as this occurs, and, for the credit of judicial proceedings, it is to be hoped that it never will again. The proceeding is a contempt of this court, and

the attempt to uphold it more to be admired for its boldness than its discretion.

In the language of Chief Justice TANEY, in *Lord* v. *Veazie*, 8 How. 254, "It is the office of courts of justice to decide the rights of persons and property, when the persons interested cannot adjust them by agreement between themselves, and to do this upon the full hearing of both parties. And any attempt, by a mere colorable dispute, to obtain the opinion of the court upon a question of law which a party desires to know for his own interest or his own purposes, when there is no real and substantial controversy between those who appear as adverse parties to the suit, is an abuse which courts of justice have always reprehended and treated as a punishable contempt of court." That courts will not take cognizance of suits which appear to be fictitious has long been recognized as a rule of law by this court. *Brewington* v. *Lowe*, 1 Ind. 21; *Hotchkiss et al.* v. *Jones*, 4 Ind. 260. In *Cleveland* v. *Chamberlain*, 1 Black 419, the principle of *Lord* v. *Veazie* was reaffirmed; affidavits of third parties interested in the question involved were heard to show that the case was not carried on in good faith between the parties, who were nominally the appellant and appellee, and the appeal was dismissed.

An attorney takes an oath " faithfully and honestly to discharge the duties of an attorney at law;" among these are, to maintain the respect that is due to the courts of justice; to counsel or maintain such actions, proceedings or defenses only as appear to him legal and just; to employ, for the purpose of maintaining the causes confided to him, such means only as are consistent with truth." With such an oath resting upon the conscience, in view of these simple but high and important duties, it is difficult to conceive how an attorney of this court, sustaining a respectable standing at home, could be guilty of the offense brought to light by this record. It is due to the profession to say that such occurrences are very rare.

The appeal is dismissed at the cost of the appellee, including the costs of this motion.

*T. W. Bennett,* for appellant.

*J. S. Reid* and *B. F. Claypool,* for appellee.