## Commonwealth v. Gabhart.

(Decided October 2, 1914.)

### Appeal from Washington Circuit Court.

1. Indictment—Opium—Indictment for Illegal Sale of—Sufficiency of.—An indictment found under Chapter 86, Acts of 1912, charging a sale of morphine for a purpose other than a legitimate use, is not bad on demurrer because of its failure to allege that morphine is an alkaloidal salt or derivative of opium. The word morphine has as well defined a meaning as the word whiskey and is well known to the generality of the people to be a derivative of opium, possessing great narcotic power and deadly effect as a poison.

2. Indictment—Words—How Construed—Matters of Judicial Notice. —Section 137, Criminal Code, provides: "The words used in an indictment must be construed according to their usual acceptation in common language, except words and phrases defined by law, which are to be construed according to their legal meaning." Matters of which the court will take judicia. notice need not be stated in a pleading (section 119, Civil Code); and the matters of which judicial notice may be taken are those which must have happened according to the constant and invariable course of nature, or are of such general or public notoriety that every one may be fairly presumed to be acquainted with them.

3. Statutes—"Legitimate Use"—Meaning of—Failure to define does not Render Statute Void for Uncertainty.—The established rules of construction do not require that the sufficiency of penal statutes should be measured by a technical standard that would impair their efficiency and make their enforcement difficult, if not impossible. The word "legitimate" in the statute is not used in its original sense of lawful, but in its secondary sense of proper or warranted, as when we speak of a legitimate conclusion or a legitimate argument. Morphine is sold for legitimate purposes under the statute, when under the facts, a druggist or doctor, acting according to the ordinary usages of the profession and exercising ordinary care, would have made the sale. This is a question for the jury and should be so submitted to them by an instruction of the court.

4. Evidence—Druggists and Physicians—Expert Testimony—When Permissible.—Druggists and physicians may testify as experts upon the question of whether or not a sale of morphine or other alkaloidal salt or derivative of opium, by retail, is for a legitimate use.

JAMES GARNETT, Attorney General, and C. S. HILL, Commonwealth's Attorney, for appellant.

W. C. McCHORD for appellee.

Opinion of the Court by Judge Settle—Reversing.

The following indictment was returned by the grand jury of Washington County against the appellee, W. S. Gabhart, a regular licensed and practicing physician:

"The grand jury of Washington County, in the name and by the authority of the Commonwealth of Kentucky, accuse W. S. Gabhart of the offense of unlawfully prescribing for, procuring for, selling and dispensing morphine to another person for purpose other than legitimate use, committed as follows, this; the said W. S. Gabhart on the —— day of March, 1913; and within twelve months before the finding of this indictment in the county and Commonwealth aforesaid, being at the time a legally licensed physician, did unlawfully, prescribe for, procure for, sell and dispense to Will Harmon, morphine for a purpose other than for legitimate use. The said Harmon was not a wholesale druggist nor registered pharmacist not a legally licensed physician, nor a dentist, nor a veterinary surgeon, contrary to the form of the statute in such cases made and provided, and against the peace and dignity of the Commonwealth of Kentucky."

The indictment was found under Chapter 86, Acts of 1912 (page 251), entitled: "An act to regulate the sale of opium or its alkaloidal salts, or their derivatives or any admixture thereof." In addition to certain provisions declaring how opium or its alkeloidal salts or their derivatives may be sold, the act further provides:

"Any registered pharmacist, licensed physician, dentist or veterinary surgeon, who shall prescribe for, procure for or sell, or dispense to any person, opium or its alkaloidal salts or their derivatives, or any admixture containing opium or its alkaloidal salts or their derivatives, or otherwise deal in the same for any purpose other than for the legitimate use as herein provided, shall thereby render himself amenable to the penalties as in this section provided;" the penalty being a fine of not less than twenty nor more than one hundred dollars.

The circuit court sustained a demurrer to the indictment upon the ground that the facts therein alleged failed to charge an offense under the statute. This conclusion of the court below was based upon the theory that as the indictment failed to charge that the morphine prescribed for and sold the purchaser by appellant was an alkaloid or derivative of opium or an admixture containing opium, and the court could not judicially know or say that such was its character, this omission rendered the indictment fatally defective.

Naturally, this suggests the inquiry: Of what facts may a court take judicial notice? We know of no better rule for determining what facts are to be regarded as within the knowledge of the court than that stated in Newman's Pleading and Practice (New Edition), section 210.

"The Code (section 119) has expressly declared that matters of which the court will take judicial notice need not be stated in a pleading. This is but an old rule of pleading under the former system. Chitty says that there are some facts of such a public or general nature that the courts ex officio take notice of them, and which consequently ought not to be unnecessarily stated in the pleading. The judicial notice here referred to not only embraces the general laws or principles of jurisprudence, which of course need not be stated or argued in a pleading, but also includes facts of public notoriety. It will frequently be difficult to distinguish those things the notoriety of which will justify the court in knowing them

judicially from those of which proof will be required. No general rule can be laid down on the subject; but it may perhaps with propriety be said that the courts will judicially known all facts affecting the public at large which are known or should be known by the generality of the people of the State. If the memory of the judge is at fault, he will refer to such documents as may be deemed worthy of confidence. To this may be added such facts as are referred to in the general statutes passed by the legislature of the State; all of which are presumed to be known to the people and judges of the Commonwealth."

In 16 Cyc., pages 825-826, the rule is thus stated:

"Courts may properly take judicial notice of facts that may be regarded as forming part of the common knowledge of every person of ordinary intelligence and understanding, but not facts merely because they may be ascertained by reference to dictionaries, encyclopedias or other publications; nor of facts which the court cannot know without resorting to expert testimony or other proof."

In 4 Words and Phrases, page 3858, the same rule is stated in the following language:

"The matters of which judicial notice may be taken are those which must have happened according to the constant and invariable course of nature, or are of such general or public notoriety that every one may be fairly presumed to be acquainted with them."

While morphine is not named in the statute as an alkaloid, derivative or admixture of opium, we do not suppose there is a person of ordinary intelligence or common understanding residing in the State but has familiar knowledge of its power as a narcotic, its deadly effect as a poison, and that it is an alkaloid or derivative of opium. The word morphine has as well defined a meaning as the word whiskey and its qualities and effect are as well known to the generality of the people of the State as are those of the intoxicant known as whiskey; and manifestly it would be a work of supererogation to allege in an indictment charging one with the unlawful sale of whiskey that it is a spirituous liquor or intoxicant. In Pedigo v. Commonwealth, 24 R., 1029, we said in overruling a petition for re-hearing:

"By section 130 of the Code, facts of which judicial notice is taken need not be alleged. It is unnecessary,

to prove facts of common knowledge or the meaning of words in the vernacular language. (1 Greenleaf on Evidence, section 5.) It is judicially known that whiskey or brandy is a spirituous liquor; also that lager beer is a malt liquor. (Bishop on Statutory Crimes, section 1006a.) It is equally well judicially known, as a matter of common knowledge, that bock beer or a common beer is a malt liquor. The proof of the witness certainly warranted the jury in finding that the beer he bought was either lager beer or common or bock beer.''

By section 137, Criminal Code, it is declared that:

''The words used in an indictment must be construed according to their usual acceptation in common language, except words and phrases defined by law, which are to be construed according to their legal meaning.'' Section 460, Kentucky Statutes.

In view of what has been said it is hardly necessary to add that, in our opinion, the validity of the indictment is not affected by its failure to state that the morphine sold by appellee under the circumstances therein alleged was an alkaloid or derivative of opium.

It is further insisted for appellee that the failure of the statute to define the words ''legitimate use'' renders it void for uncertainty. In other words, it is argued that the statute fixes no standard by which the physician or druggist in selling or dispensing opium, its alkaloidal salts or derivatives, is enabled to know what use of it by the purchaser would or would not be legitimate; and that the indictment in simply charging in the language of the statute that the sale made by appellee was for other than a legitimate use of the drug, fails to state an offense under the statute.

Authority may be found, even among the decisions of this court, that apparently sustains this contention, but none of them rests upon the precise state of case here presented; and in the recent case of Katzman v. Commonwealth, 140 Ky., 124, we had under consideration the validity of section 2630, Kentucky Statutes, which regulates the sale of certain poisons by retail, and declares in substance that a sale or delivery of such poisons shall not be made by any person without satisfying himself that the poison is to be used for legitimate purposes, without defining the words ''retail'' and ''legitimate purposes.'' A prosecution instituted by warrant against Katzman for violating this statute resulted in his convic-

tion, and he sought a reversal of the judgment, upon appeal, on the ground that the statute was void for uncertainty because it failed to define the words "retail" and "legitimate purposes." We held, however, that the statute was not void on either of these grounds, and with respect thereto in the opinion, in part, said:

"In the argument in support of the objection mentioned it is said that the legislature should have defined the meaning of the words 'retail' and 'legitimate purposes,' so that a druggist might know what quantity would constitute a sale by retail and what would or would not be considered a sale for legitimate purposes; and so, that there could not be two opinions as to what these words mean when different courts or juries came to pass upon questions involving a violation of the statute. It may be admitted that although the meaning of the words 'retail' and 'legitimate purposes,' as used in the statute are reasonably well understood, it is nevertheless possible that there might be difference of opinion as to whether in a given state of case the sale of a drug was by retail or for a legitimate purpose, and it is possible that in administering this statute it may occasionally happen that a druggist will be accused who claims not to know what constitutes a sale by retail or what is a legitimate use of opium; and it is also possible that different trial courts and juries may not always be harmonious in the conclusions reached upon this point. But the fact that there may be occasional doubt or want of agreement on this question cannot be allowed to invalidate the statute. If this rule obtained, many penal statutes that have stood unquestioned for years and have been often enforced would be held invalid. There are numerous statutes in existence creating and describing offenses the enforcement of which often brings into prominent notice a question concerning the meaning of words in the law about which different persons might reach a different conclusion. In the trial of many criminal cases there are of necessity submitted to the jury issues involving the meaning of certain words upon which depend the guilt or innocence of the accused; and with the court or jury, as the case may be, is left the decision whether or not the law under which the prosecution is pending has been violated. It would of course be extremely desirable if every penal statute could be made so plain as not to leave any doubt as to its meaning, and so intelligible as that

every person could by reading it at once decide what he might with safety do under it. But this ideal condition is not attainable. It would not be at all practicable to define in every statute the meaning of controlling words in it, that there may be difference of opinion concerning when it is attempted to apply them to a given state of facts. To do this would extend to unreasonable length almost every statute that creates and describes an offense, and would also complicate and confuse the administration of the criminal law, as the definitions would often be as uncertain as the thing defined. Every penal statute should be given a reasonable construction, one that will effectuate the legislative intent in its enactment; and if it describes the offense in language that can be understood by persons of ordinary intelligence, it will not be declared invalid on the ground of uncertainty. The established rules of construction do not require that the sufficiency of penal statutes should be measured by a technical standard that would impair their efficiency and make their enforcement difficult, if not impossible. A little common sense, as well as legal learning, must be used in the practical administration of the law; and it is not essential that a statute shall be so elaborate in its detail as to attempt to meet every possible state of fact that may arise under it    *    *    *;"

The opinion then proceeds to state that a person who has intelligence enough to conduct a drug store could not fail to know what would constitute the selling of a drug. by retail or to understand the meaning of the words legitimate purposes as used in the statute; that the druggist must, as declared by the statute, first satisfy himself that the sale of the drug or poison is for a legitimate purpose, and that if he, in fact, does not know the purpose for which the poison is to be used, or has any doubt about it, then he must in good faith exercise reasonable care to find out the purpose for which the drug or poison is bought. It is further said in the opinion:

"The statute was intended to regulate sales by druggists, and when it is sought to apply the words 'legitimate purposes' to a sale of drugs or poison by druggists, they have a technical meaning that may not be clearly known or understood by courts or jurors, and so it is permissible to allow experts to give evidence as to what is regarded by qualified druggists and physicians legitimate purposes for which sales may be made so that the trial court

and jury may be informed as to what is recognized as a legitimate purpose for which these drugs may be sold by those entrusted with their sale, and to whom, in a measure, is confined the knowledge as to what constitutes a sale for legitimate purposes. * * * The question is further suggested that the construction of words and phrases in a statute is usually for the court. Generally this is true. But, if it is shown by evidence that words and phrases are susceptible of two meanings, depending on the state of facts it is attempted to apply them to, the court may instruct the jury in the words of the statute and leave them to find from the evidence whether it has been violated. To illustrate, if there should be difference of opinion on the part of witnesses as to whether or not the sale being inquired into was made for a legitimate purpose, the court should leave it to the jury to find the fact and make their verdict accordingly."

The reasoning contained in the opinion in the case, *supra*, applies with equal force to the statute here involved and must control in the construction to be given the words "legitimate use" found therein. The failure of the statute to define these words does not make it void for uncertainty. The word legitimate in the statute is not used in its original sense of lawful, but in its secondary sense of proper or warranted, as when we speak of a legitimate conclusion or a legitimate argument. Morphine is sold for legitimate purposes under the statute, when under the facts, a druggist or doctor, acting according to the ordinary usage of the profession and exercising ordinary care, would have made the sale. This is a question for the jury and should be so submitted to them by the instruction of the court. If, upon a trial of the case, the appellee should make the defense that the sale of morphine with which he is charged in the indictment was made for a legitimate use, it will be competent for him to show by evidence of physicians or druggists that the use for which he sold the morphine to the purchaser is a legitimate use. On the other hand, the Commonwealth may also introduce evidence to show that the use was not a legitimate one; and following the introduction of the evidence the court should instruct the jury upon the issue of fact thereby presented in such manner as will enable them to determine whether or not the sale made by appellee was for a legitimate use as contemplated by the statute.

For the reasons indicated the judgment is reversed and cause remanded with directions to the circuit court to overrule the demurrer to the indictment and for further proceedings consistent with the opinion.