## Riley and Bealmear v. Wallace, Judge.

(Decided June 18, 1920.)

### Appeal from Jefferson Circuit Court (Chancery Branch, First Division).

1. Contempt—Power to Punish.—All courts of record of superior jurisdiction have the inherent power to punish for contempt.

2. Contempt—Power to Punish.—The court may for contempt impose a fine of not exceeding $30.00 or imprisonment not exceeding thirty days without the intervention of a jury, but when in the opinion of the court the indignity offered requires a greater punishment the court is required to have a jury impaneled.

3.  Contempt—False Swearing.—False swearing by a witness is such an obstruction of justice as constitutes a direct contempt of court.

4.  Contempt—Power to Punish.—A chancellor is not authorized to proceed by information and rule to punish for contempt unless he has actual or judicial knowledge that the person proceeded against has sworn falsely.

5.  Contempt—Absence of Judicial Knowledge.—Two witnesses testified in a divorce suit. The chancellor having been informed that their testimony was false the witnesses were summoned to appear and testify on a motion to modify the divorce decree, on this hearing the witnesses gave such testimony as in the judgment of the court indicated they had sworn falsely in their original testimony, whereupon an information was filed and rule issued against said witnesses to show why they should not be punished for contempt. Held, that the court did not have such actual or judicial knowledge of the alleged false statements as justified it in adopting such procedure.

CHARLES P. JOHNSON and CLEM W. HUGGINS for petitioners.

N. C. CURETON, Assistant County Attorney, GROVER G. SALES and JOHN L. WOODBURY for defendants.

OPINION OF THE COURT BY JUDGE QUIN—Granting a restraining order, etc.

W. H. Haney sued his wife for a divorce on the ground of five years' separation. On the proof of two witnesses, C. B. Riley and A. W. Bealmear, a judgment granting the prayer of the petition was entered November 25th, 1919. December 2nd, defendant moved the court to set aside the judgment of divorce on the ground of accident and surprise, and because of fraud in the obtention of the decree, setting up in an affidavit filed in support of the motion that her husband had admitted to her that he had no cause for divorce and had promised to drop the proceedings. For this reason an answer prepared by her counsel was not filed, and she took no further steps in the matter. The first she knew of the judgment was when she saw a notice in a newspaper to that effect on November 25th, 1919.

When the motion was first called on the docket, W. H. Haney filed his affidavit stating that on November 26th, 1919, the day following the entry of the judgment, he had married one Gladys Innes, and thus the status of the parties had been changed. The motion was set for hearing on the 17th of December. In the meantime

subpoenas were issued for various witnesses, including Riley and Bealmear, to appear on said date. Upon that hearing it was established that Haney and his wife had lived together as man and wife within two years prior to the filing of the petition for divorce. The testimony of Riley and Bealmear substantially showed that the evidence given by them in the divorce case was based upon information received from Haney. Thereafter, to-wit, January 3, 1920, an information was filed by Honorable Arthur M. Wallace, judge of the chancery branch, first division, Jefferson circuit court, who had granted the decree, in which he set out in detail the facts charging that the testimony given by the two witnesses aforesaid was false and untrue and said statements were for the purpose of interfering with the lawful and true administration of justice in said case. A rule returnable January 6, 1920, was issued upon said information. In a response to this rule, filed by Riley and Bealmear, they denied they were guilty of contempt, or that the testimony given by them in the divorce suit was untrue. At the same time they filed a demurrer to the information as well as a motion to strike same from the record. These were overruled and the court of its own motion struck out certain parts of the response, and before the rules were called up, to-wit, on January 29th, Riley and Bealmear petitioned a member of this court for an order restraining Judge Wallace from entering any order or proceeding in anywise to punish the petitioners for contempt of court.

By agreement of the parties the proceedings in the circuit court were held in abeyance until the matters could be disposed of by this court.

As a general statement it may be said that all courts of record of superior jurisdiction have the inherent power to punish for contempt. Arnold v. Commonwealth, 80 Ky. 300. This right is recognized by statute. For instance in section 1291, Kentucky Statutes, it is provided that a court may for contempt impose upon the offender a fine not exceeding $30.00 or imprisonment not exceeding thirty hours, without the intervention of a jury.

In the Arnold case, *supra,* it was held that it was not necessary to provide by statute a mode of trial in contempt cases. The manner of conducting such proceedings was established by a rule of the common law, and all the legislature has said is that the tribunal to whom the contempt is offered shall not, by way of punish-

ment, exceed a fine of thirty dollars or imprisonment exceeding thirty hours without the intervention of a jury. The rule of the common law has been modified by giving to the party charged, the right to a trial by jury, and the judge is required to have a jury empaneled, when, in his opinion, the indignity offered requires a greater punishment than he is authorized to impose by the statute.

Of prime importance is an answer to the question whether the petitioners were guilty of contempt of court.

As said in 13 C. J. 25: ''Ordinarily false swearing by a witness is held to be such an obstruction of justice as to constitute a direct contempt of court.'' This, we think, is a fair statement of the rule. Contempts of court are either direct or constructive. It is manifest the court treated the acts of the petitioners as a direct contempt and we will deal with it as such.

Unless the chancellor knew the testimony given by the petitioners was false, the petitioners could not be proceeded against by information and rule, hence it becomes necessary to inquire as to whether the court had actual or judicial knowledge or cognizance of the alleged falsity of the statements given or made by the petitioners. Knowledge of notorious facts, i. e., common knowledge, the court may be assumed to share with other intelligent men. Judicial knowledge is not the personal knowledge of the judge, it may be defined as the cognizance of certain facts which a judge under the rules of legal procedure or otherwise may properly take or act upon without proof because already known to him, or that knowledge which the judge has or is assumed to have by virtue of his office, *virtute officii.* To announce and enforce the provision of certain laws, substantive or procedural, is one of the judicial powers of the court and a very important object in the creation of the tribunal. Knowledge of such is therefore an essential attribute of the office. Cognizance of these rules of law is not, like that of facts in general, something which comes to the judge from without, i. e., *dehors* the judicial office. Chamberlayne on Evidence, secs. 570, 572.

As said by Prof. Thayer in his Treatise on Evidence, the two maxims, that what is known need not be proved, *manifesta non indigent probatione,* and it matters not what is known to the judge if it is not known to him judicially, *non refert quid notum sit judici si notum, non*

*sit in forma judicii,* compromise the whole doctrine of judicial notice.

Judicial notice will be taken of whatever ought to be generally known within the limits of the court's jurisdiction.

In Wade on Notice, section 1403, it is said:

"The classes of fact of which notice will be taken are judicial, legislative, political, historical, geographical, commercial, scientific and artistic, in addition to a wide range of matters, arising in the ordinary course of nature, or the general current of human affairs, which rest entirely upon acknowledged notoriety for their claims to judicial recognition."

See also Commonwealth v. Gabhart, 160 Ky. 32, 169 S. W. 514.

Judicial notice of legislative acts and resolutions and of the official signature of any officer of this state, of the United States, or of any state or territory in the United States is enjoined by Kentucky Statutes, sections 1624 and 1625.

If the chancellor had had actual knowledge that Riley and Bealmear had made false statements he would not have entered the decree of divorce nor could he judicially have known of the alleged false testimony. It was not until after they were ordered to appear at the hearing under process of the court and in response to questions by attorneys appointed by the court to assist in the investigation that they gave information which led the chancellor to believe they had made false statements. Petitioners are here insisting that the statements made by them were not false, but we will not enter into a discussion of this question.

As said in People v. Stone, 181 Ills. App. 475:

"In a case of direct contempt, it (the court) may act upon that of which it may take judicial notice, but it cannot judicially know that evidence is false unless at the trial it is so made to appear by the witness' own admission or perhaps by unquestioned or incontrovertible evidence. Otherwise the court would act merely upon its belief or conclusions derived from evidence heard, and not upon matter of fact of which it had judicial cognizance, which is essential to summary proceeding for direct contempt."

And as further said in the foregoing opinion:

"If false swearing in the presence of the court constitutes direct contempt, then judicial knowledge of its falsity is, in our opinion, indispensable to the right of the court to exercise authority therefor, and there is nothing in the record to disclose that the court knew or could know that the testimony was false."

Judge Wallace did not know, indeed could not know, from the record of the alleged falsity of the testimony given by Riley and Bealmear. At most he was acting upon a presumption not upon judicially known facts. With commendable promptness he sought, though by an improper method, to have the parties, if guilty, punished. We do not doubt he was convinced of their guilt; however, the facts were not disclosed until after a hearing of the motions to modify the judgment, and this was held at a date subsequent to the filing of Haney's affidavit, and when it was known that the status of the parties was such that the judgment of divorce could not be annulled.

Gordon v. Commonwealth, 141 Ky. 461, 133 S. W. 206, was a proceeding similar to this, but it was disposed of on a plea of limitation. The court intimates that the punishment inflicted on appellant in that case was warranted because of his own admission of guilt when testifying in a pending damage suit, a situation not presented here. Petitioners are denying they gave false testimony, besides the alleged falsity was not ascertained until after an independent investigation in which petitioners were ordered to appear and testify. We cannot give our approval to this plan of procedure.

As said in Melton v. Commonwealth, 160 Ky. 642, 170 S. W. 37, L. R. A. 1915B, 689:

"In thus speaking, we do not undervalue the importance of protecting courts or keeping pure the administration of the law; nor do we think what we have said limits in any manner the power courts have always possessed to punish as for contempt persons who were guilty of contempt as it has always been defined. When a court has full power and authority to protect its dignity, enforce its processes, discipline its officers and punish those who would impede or bring into disrepute the administration of justice in a pending case, it has all the authority that is needed to be exercised through contempt proceedings, and other offenses should be left to be disposed of in the ordinary way."

If the petitioners were guilty as charged in the information they should not go unpunished; the practice of attempting to secure court judgments upon false or fraudulent testimony should not and will not be tolerated, nor would we be understood as sanctioning such practice, or any semblance thereof, because it is deserving of the severest condemnation and censure. We only hold that the facts shown in the record before us do not present a case justifying the procedure adopted; the chancellor could not judicially know the petitioners were guilty as charged. If the petitioners are thought to be guilty that is a matter that should receive the consideration of the officers of the criminal court, and due notice of the facts should be brought to their attention for such action as may be deemed advisable.

For the reasons given the relief sought must be granted and defendant will be enjoined and restrained from proceeding further in the contempt proceedings.

The whole court sitting.