No. 13,049.

PEOPLE EX REL. ATTORNEY GENERAL *v.* THOMPSON.
(17 P. [2d] 538)

Decided December 12, 1932.

Mr. CLARENCE L. IRELAND, Attorney General, Mr. OLIVER DEAN, Assistant, Mr. RALPH L. CARR, for petitioner.

Mr. F. E. DICKERSON, Mr. T. J. MORRISSEY, for respondent.

*En Banc.*

MR. JUSTICE MOORE delivered the opinion of the court.

LUDWIG Thompson was charged with contempt in a disciplinary proceeding against a Colorado attorney instituted by the attorney general on order of this court. Neither this disciplinary action nor this contempt charge was caused to be instituted by the interposition or action of our grievance committee. After issues joined, the cause was referred to a referee, Hon. Stanley T. Wallbank, who filed his report September 22, 1932, finding respondent guilty of contempt of this court, whereupon respondent was allowed twenty days within which to file exceptions thereto. No exceptions were filed within that time.

The referee's report discloses that on October 4, 1929, Thompson made an affidavit, charging a Denver lawyer with gross unprofessional conduct, for the purpose of being, and thereafter to be, used in disbarment proceedings against him.

In January, 1930, disbarment proceedings (No. 12,543) were instituted, based, inter alia, upon said affidavit and therein before Mr. Justice Burke, to whom the case had been referred, respondent swore in effect that the statements made in the affidavit were untrue.

We approve the referee's report which sets forth in detail the charge and testimony herein and that given before Mr. Justice Burke in the disbarment proceedings.

We find the respondent, Ludwig Thompson, guilty of criminal contempt of this court; decree that he be fined therefor the sum of $300, and that he be incarcerated forthwith in the jail of the City and County of Denver and there held for a period of three months or until said fine has been paid or until further order of this court.

MR. JUSTICE ALTER concurs in the conclusion but believes that the penalty is inadequate.

MR. JUSTICE BUTLER specially concurs.

MR. JUSTICE HILLIARD dissents.

MR. JUSTICE BURKE not participating.


MR. JUSTICE BUTLER, concurring.

While there was pending in this court a proceeding to disbar J. W. Kelley for unprofessional conduct in connection with several transactions, Ludwig Thompson made an affidavit charging Kelley with unprofessional conduct in connection with another transaction. The affidavit was made for the purpose of being used in that disbarment proceeding, and it was so used. Upon presentation of that affidavit to us, we permitted an amendment of the petition for disbarment so as to include the transaction to which the affidavit related. At the hear-

ing before the referee, Thompson denied every act of culpability on the part of Kelley that he had asserted in the affidavit, his explanation being that he had signed the affidavit to get rid of a woman who importuned him to sign it. There was no evidence to support the charge against Kelley, and the referee so reported. Thereupon this contempt proceeding was commenced.

An examination of the record satisfies me, as it does my brother Hilliard, that Thompson's testimony given at the disbarment hearing is true, and that the statements in his affidavit are false. There can be no serious doubt that, when he signed the affidavit, Thompson knew that the statements therein were false. Thompson was guilty of an imposition upon the court; an interference with, and an obstruction of, the administration of justice; and such misconduct constitutes contempt of court, and is punishable as such.

This conclusion is supported by authority. In *Gibson v. Tilton,* 1 Bland (Md.) 352, 355, it was said that a party who uses an affidavit that he knows is false may be punished for practicing an imposition upon the court. So, also, the presentation to the court of a feigned issue or of a fictitious case is a contempt of court. Thus, in *Lord v. Veazie,* 8 How. 251, the court, speaking through Chief Justice Taney, said: "It is the office of courts of justice to decide the rights of persons and of property, when the persons interested cannot adjust them by agreement between themselves—and to do this upon the full hearing of both parties. And any attempt, by a mere colorable dispute, to obtain the opinion of the court upon a question of law which a party desires to know for his own interest or his own purposes, when there is no real and substantial controversy between those who appear as adverse parties to the suit, is an abuse which courts of justice have always reprehended, and treated as a punishable contempt of court." In *Butterworth v. Stagg,* 2 Johns. Cas. (N. Y.) 291, Woodhull brought a suit in the name of Butterworth without the latter's consent. Coun-

sel for the defendant moved for a rule on Woodhull to show cause why an attachment should not issue against Woodhull for costs, on the ground of a contempt of the process of the court. The court said: "This is evidently an abuse of the process of the court. It is a contempt to bring a *fictitious* suit, or to use the name of another, without his privity or consent." In *Smith v. Brown,* 3 Tex. 360, the court said, at page 371: "It was manifestly the object of the parties in this suit to obtain a judicial decision on the constitutionality of the apportionment act of the last session of the Legislature. The suit is not founded on a *bona fide* transaction. It is either an entire fiction, or it is a wager, designed to effect the same object. * * * every fictitious case is a contempt of the court, and when known to be such, has subjected the parties to the severe animadversion of the court; such as fine and imprisonment." In *Smith v. Junction Ry. Co.,* 29 Ind. 546, the court dismissed an appeal on the ground that one of the parties was a fictitious person, and that there was no real controversy existing between the parties to the suit. The court said, at page 550: "It is not often that such a case as this occurs, and, for the credit of judicial proceedings, it is to be hoped that it never will again. The proceeding is a contempt of this court." The court quoted with approval the language of Chief Justice Taney, in *Lord v. Veazie, supra.* See also 6 R. C. L. p. 494.

The case of *Melton v. Commonwealth,* 160 Ky. 642, 170 S. W. 37, cited in the opinion of my brother Hilliard, does not weaken my faith in the correctness of the conclusion at which I have arrived. It tends rather to support that conclusion, for the court held that if the wrongful act charged had been committed during the pendency of a suit—such is the present case—it would have constituted contempt of court. The physician was discharged because, and only because, no suit was pending when the wrongful act was committed.

For the reasons stated above, I concur in the judgment.

Mr. Justice Hilliard, dissenting.

I do not agree that the respondent is guilty of criminal contempt, as the court adjudges; but since in the opinion of the court no fact recitals appear, no legal principles are announced and no review of authorities is indulged, I must, to make my position clear, give attention in this dissent to what customarily is in major pronouncements.

This matter grows out of a proceeding brought to disbar an attorney, and in which the evidence failed. By leave of court, the attorney general, prompted thereto by the court, filed an information charging respondent with contempt. Such charge was based on the conception that respondent's testimony given at the trial was inconsistent with what he had set forth in an affidavit which was used, but, as I read the record, not so intended by respondent, in formal charges made against the attorney, hence that probably respondent was guilty of perjury. In the light of rules of procedure orderly to be observed, and the constitutional guaranties afforded one, the gravamen of whose alleged offending, as here, is perjury, it is important to keep in mind it does not appear, nor is it claimed, that from anything inherent the testimony given by respondent at the trial, by contradiction or otherwise, was false.

The contempt proceeding came to issue on the information filed by the attorney general, the respondent's answer thereto and the attorney general's replication to the answer. Omitting burden of detail, it is sufficient to say the pleadings presented issues making necessary the taking of testimony. To that end, and for findings, the matter was sent to a referee, who, as his report shows, not only considered the original affidavit of the respondent and the testimony he gave at the disbarment hearing, but examined several witnesses under oath, including the respondent, touching the claimed inconsistencies between

the original affidavit and testimony given at the trial. As the result of such examination the referee concluded that falsity obtained, but whether in the affidavit or testimony, he expressed no opinion. Based thereon the referee further concluded that respondent had not only "impeded" justice in a disbarment proceeding, but was the cause of the "expense incident to the reporting of this proceeding." For these reasons, not one more than the other, and because "this court," as the referee says, "has inherent power to punish criminal contempts committed in the immediate presence of the court," he recommended that respondent be adjudged guilty of criminal contempt and fined in the sum of $500. The court has approved the findings, but has reduced the fine to $300 and added the alternative of a term in jail.

In support of his conclusion the referee cited the cases of *Eykelboom v. People,* 71 Colo. 318, 206 Pac. 388; *Lindsey v. People,* 66 Colo. 343, 181 Pac. 531; *Wyatt v. People,* 17 Colo. 252, 28 Pac. 961, and as the court does not cite authorities and refrains from discussion of the law, it is proper to assume that the cases mentioned by the referee are relied upon by the court to support its judgment. It becomes important, therefore, to examine those cases. They will be reviewed in the inverse order of their presentation by the referee. In *Wyatt v. People* this court reversed a judgment holding Wyatt guilty of contempt. The matter there grew out of the refusal of Wyatt as deputy secretary of state to permit a grand jury to inspect rooms and records under his control, the point being that no order of court had been made requiring him to submit to such request of the grand jury. Clearly an alleged constructive contempt, wholly unlike the proceeding here. In *Lindsey v. People,* the alleged contempt consisted in the refusal of a witness, sworn and on the stand, to answer questions which properly he could be required to answer. A clear case of contemptuous conduct in the presence of the court. In *Eykelboom v. People,* the court determined from examination and

analysis of Eykelboom's testimony in the case on trial, as the trial court had found, that he had committed perjury, properly to be resolved as contemptuous conduct in the presence of the court. Mr. Justice Burke, author of the opinion, citing 13 C. J. 25, said: "It is the law that a court has the right to punish as a contempt manifest perjury committed in its presence, where the court knows, judicially and beyond doubt, that the testimony is false." With the exception of *Eykelboom v. People*, which is an authority contrary to the referee's conclusion, none of the cases cited by him is in point. The clear implication in the Eykelboom case is that had it been necessary to make examination of anything other than the record of Eykelboom's testimony at the trial, the matter could not have been determined through the medium of a proceeding in contempt. Indeed, the case cited in support of the text in 13 C. J. 25, referred to in the Eykelboom opinion, *People v. Stone,* 181 Ill. App. 475, definitely so holds. I quote from the Illinois decision:

"If it was deemed constructive contempt, requiring a hearing to show whether the testimony was false, and one was had for that purpose, * * * then the court practically converted itself into a tribunal to try a charge of perjury in utter disregard of the constitutional guaranties afforded one charged with crime.

"But presumably the court treated it as a direct contempt on the theory that it judicially knew that the testimony was false, * * *.

"But there is nothing in the record to disclose that the court knew that the testimony was false. In a case of direct contempt, it may act upon that of which it may take judicial notice, but it cannot judicially know that evidence is false unless at the trial it is so made to appear by the witness' own admission or perhaps by unquestioned or incontrovertible evidence. Otherwise the court would act merely upon its belief or conclusions derived from evidence heard, and not upon matters of fact

of which it had judicial cognizance, which is essential to the summary proceeding for direct contempt.''

Before one may be adjudged guilty of contempt ''it must appear beyond a reasonable doubt from the personal knowledge of the court, or by admissions from the lips of the defendant himself in open court, and in the presence of the court, and from no other source whatsoever, that (1) the representations so made were false and untrue when made; (2) that the defendant knew of their falsity when he made them; and (3) that he made them, knowing their falsity and with a willful and malevolent intention of assailing the dignity of the court, or of interfering with its procedure and the due administration of justice.'' *People v. Hille,* 192 Ill. App. 139.

In *Ex parte Hudgings,* 249 U. S. 378, Mr. Chief Justice White announced the rule that I think should control here. Speaking for that court, which has never concerned itself with those who thought themselves great enough to be contemptuous of it, he said:

''Whether, then, power to punish for contempt exists in every case where a court is of the opinion that a witness is committing perjury, is the test we must here apply. Because perjury is a crime defined by law, and one committing it may be tried and punished, does not necessarily establish that when committed in the presence of a court it may not, when exceptional conditions so justify, be the subject-matter of a punishment for contempt. * * * This being true, we must ascertain what is the essential ingredient, in addition to the elements constituting perjury under the general law, which must be found in perjury when committed in the presence of a court to bring about the exceptional conditions justifying punishment under both.

''Existing within the limits of and sanctioned by the Constitution, the power to punish for contempt committed in the presence of the court is not controlled by the limitations of the Constitution as to modes of accusation and methods of trial generally safeguarding the

rights of the citizen. This, however, expresses no purpose to exempt judicial authority from constitutional limitations, since its great and only purpose is to secure judicial authority from obstruction in the performance of its duties to the end that means appropriate for the preservation and enforcement of the Constitution may be secured. * * *

"An obstruction to the performance of judicial duty resulting from an act done in the presence of the court is, then, the characteristic upon which the power to punish for contempt must rest. This being true, it follows that the presence of that element must clearly be shown in every case where the power to punish for contempt is exerted—a principle which, applied to the subject in hand, exacts that in order to punish perjury in the presence of the court as a contempt, there must be added to the essential elements of perjury under the general law the further element of obstruction to the court in the performance of its duty. * * * It is true that there are decided cases which treat perjury, without any other element, as adequate to sustain a punishment for contempt. But the mistake is, we think, evident, since it either overlooks or misconceives the essential characteristic of the obstructive tendency underlying the contempt power, or mistakenly attributes a necessarily inherent obstructive effect to false swearing. If the conception were true, it would follow that when a court entertained the opinion that a witness was testifying untruthfully, the power would result to impose a punishment for contempt, with the object or purpose of exacting from the witness a character of testimony which the court would deem to be truthful; and thus it would come to pass that a potentiality of oppression and wrong would result, and the freedom of the citizen, when called as a witness in a court, would be gravely imperiled."

In *Riley v. Wallace,* 188 Ky. 471, 222 S. W. 1085, information was filed charging respondents with contempt for perjury. There appeared to be no question of their

guilt, but since the record of their testimony did not of itself show the falsity, the court adjudged they could not be held for contempt on facts elicited at a hearing on the charge of contempt. The court said: "Of prime importance is an answer to the question whether the petitioners were guilty of contempt of court." This was followed by the quotation from 13 C. J. 25, cited by us in the Eykelboom case, said by the court to be a "fair statement of the law." The court also quoted and approved *People v. Stone, supra.* In the course of the opinion the Kentucky court further said: "Contempts of court are either direct or constructive. It is manifest the court treated the acts of the petitioners as a direct contempt, and we will deal with it as such.

"Unless the chancellor knew the testimony given by the petitioners was false, the petitioners could not be proceeded against by information and rule; hence it becomes necessary to inquire as to whether the court had actual or judicial knowledge or cognizance of the alleged falsity of the statements given or made by the petitioners. * * *

"If the chancellor had had actual knowledge that Riley and Bealmear had made false statements, he would not have entered the decree of divorce, nor could he judicially have known of the alleged false testimony. It was not until after they were ordered to appear at the hearing under process of the court, and in response to questions by attorneys appointed by the court to assist in the investigation, that they gave information which led the chancellor to believe they had made false statements. Petitioners are here insisting that the statements made by them were not false, but we will not enter into a discussion of this question. * * *

"Judge Wallace did not know, indeed could not know from the record of the alleged falsity of the testimony given by Riley and Bealmear. At most, he was acting upon a presumption, not upon judicially known facts. With commendable promptness he sought, though by an

improper method, to have the parties, if guilty, punished. We do not doubt he was convinced of their guilt; however, the facts were not disclosed until after a hearing * * * held at a date subsequent. * * *

"If the petitioners were guilty as charged in the information, they should not go unpunished. The practice of attempting to secure court judgments upon false or fraudulent testimony should not and will not be tolerated, nor would we be understood as sanctioning such practice, or any semblance thereof, because it is deserving of the severest condemnation and censure. We only hold that the facts shown in the record before us do not present a case justifying the procedure adopted. The chancellor could not judicially know the petitioners were guilty as charged. If the petitioners are thought to be guilty, that is a matter that should receive the consideration of the officers of the criminal court, and due notice of the facts should be brought to their attention for such action as may be deemed advisable."

In the same case, at page 476, the court said: "The alleged falsity was not ascertained until after an independent investigation in which petitioners were ordered to appear and testify. We cannot give our approval to this plan of procedure." And in *Melton v. Commonwealth,* 160 Ky. 642, 170 S. W. 37, the court announced its judgment, and added: "In thus speaking we do not undervalue the importance of protecting courts or of keeping pure the administration of the law; nor do we think what we have said limits in any manner the power courts have always possessed to punish as for contempt persons who were guilty of contempt as it has been always defined. When a court has full power and authority to protect its dignity, enforce its processes, discipline its officers and punish those who would impede or bring into disrepute the administration of justice in a pending case, it has all the authority that is needed to be exercised through contempt proceedings, and other offenses should be left to be disposed of in the ordinary way."

The charges in the matter of the disbarment proceedings proper were not proved, and nothing appeared in that hearing justifying summary judgment of contempt against the respondent. The court should, therefore, as in any other matter, have no further concern, and if the respondent had committed perjury relegate him to the tribunals established by the Constitution, there to be tried by his peers. It is not too late to announce that salutary doctrine. Of course, it appears we do exercise whatever power the exigencies seem to require *(Kolkman v. People,* 89 Colo. 8, 66, 300 Pac. 575, 598-599), but I think to enter the judgment determined on here is not calculated to advance the court in public or legal esteem. Another fact suggesting pause is that unless the respondent shall invoke the aid of the Supreme Court of the United States, almost manifestly a thing beyond his means, there can be no review of what we do here. A state is not made great nor is respect for courts or judicial officers enhanced through employment of doubtful power by courts or their officers, particularly when appeal does not lie or is virtually impossible. Carried to a not distant extreme, the logic of the decision of the court here is to place a premium on perjury. If one makes a statement out of court, in anger or in pique, or through inducement or machination, and however extravagant or false, and thereafter under the solemnity of an oath administered in open court shall tell the truth, this decision hangs over his head, and perhaps to a compelling degree will operate to stifle the very purpose of the inquiry. Or, stated more bluntly, if one shall tell a lie he must repeat it under oath, else he may be fined and jailed for contempt.

But Mr. Justice Butler, who files an opinion in approval of the judgment of the court, cites authorities which he believes, but I do not think, support and warrant such judgment. Not one was a contempt proceeding. All were civil cases, in none was there a judgment for contempt, and the depreciatory statements indulged in the course of the opinions were observations by the

way. I review them briefly. In *Gibson v. Tilton,* 1 Bland (Md.) 352, the court discussed the sufficiency of a verification made in a foreign state to an answer interposed in an injunction suit already pending and in which a temporary writ had previously issued. The court held that the verification was ample and dissolved the writ. In their attack on the verification counsel contended that if it were false perjury would not lie in the jurisdiction of the forum, which the court courteously parried by stating that should the answer turn out to be false or spurious the parties could be punished for practicing an imposition on the court. All that occurred was that the critic of the affidavit lost his suit. *Lord v. Veazie,* 8 How. 251, was an examination by the U. S. Supreme Court of a case where it appeared the parties had conjured a state of facts about which they feigned to be in disagreement, presented the matter to a federal trial court, where judgment was entered. On appeal to the Supreme Court, taken in like bad faith, the court, as would be expected, concluded that the parties were trifling with the court's jurisdiction, and dismissed the case, each party being required to pay his own costs. *Butterworth v. Stagg,* 2 Johns. Cas. 291, was where an unauthorized person brought suit in the name of another, and, being non-suited, rule by attachment issued as in contempt to require the interloper to pay the costs. What was the final disposition does not appear, but that the case is wholly beside the point here seems clear. In *Smith v. Junction Ry. Co.,* 29 Ind. 546, it appeared that by a fictitious action the railway sought a "friendly" determination of a point to be used in a real controversy between it and another party. The court remarked that the proceeding was a contempt, and dismissed the appeal at the cost of the railway company. *Smith v. Brown,* 3 Texas 360, is a case where a wager was made as to whether a certain law was constitutional. The court expressed its contempt for the parties and declined to decide the case.

That these civil cases are inept becomes clear, I think,

when apposed to *Melton v. Commonwealth,* 160 Ky. 642, 170 S. W. 37, and other cases of direct prosecution for criminal contempt, as here, many of which I have cited. The Kentucky court kept in mind what our learned brother appears to overlook, namely, the difference between a case pending and one that may be instituted. Interference with the former may well constitute contempt; but to do or say things calculated simply to encourage the institution of a proceeding is essentially different. In the Kentucky case, Melton, a physician, in contemplation of an action to recover damages for personal injuries, soon afterwards brought, knowing there had been no injury, treated professionally the man alleged to have been injured for the purpose of creating evidence. The court said that while the respondent could have been proceeded against and punished on criminal presentment, criminal contempt would not lie. The point is that until the actual institution of a judicial proceeding, courts, from the very nature of their function, may not be concerned about facts involved or persons interested. The Kentucky court reviews the authorities at length, and differentiates in enlightening detail the effect in contempt accusations of occurrences coming before with what may take place after the institution of a proceeding in court. It would not be amiss, as I conceive, to observe that the Kentucky court sat as a reviewing tribunal, and in making determination reversed the judgment of a circuit court, no doubt presided over by a judge not less devoted to right principles than the members of the appellate court, but who, like other humans, could not wholly divorce himself from belief in the righteousness of a proceeding he had initiated. The inquiry here originated on our order and we should have a care lest to justify ourselves we overlook that which otherwise would challenge our attention. The facts are much more favorable to respondent here than in the Kentucky case. There Melton was in the conspiracy from the beginning. He manufactured the entire case and for gain. Here

Thompson was besought, not once, but many times, by one confessedly actuated by desire to embarrass the attorney, to make incriminating statements against him. Thus beset, in weakness, but not in venality, respondent did subscribe to a document prepared for his hand, in criticism of the attorney against whom his tormentor inveighed; but when called to testify in open hearing the solemnity of his oath deterred him, and the charge against the attorney was not substantiated. In relation to respondent's testimony the referee in this proceeding did not find, nor does the court, that it was other than truthful. For telling the truth, therefore, this man is made to feel our heavy hand. Such determination is without support in law and does violence to every moral prompting.

As I understand Mr. Justice Butler's opinion, he subscribes generally to the doctrine that things done or said in contemplation of an action, thereafter brought, do not come within the purview of a contempt proceeding, but rather, if they are to be examined to that end, must have to do with a proceeding presently pending. It is his conclusion, however, that the situation is met by the fact that when the Thompson affidavit was procured a petition in disbarment was pending against the attorney, in which proceeding, after receiving the affidavit, the attorney general was allowed to amend the petition by including a new count, based on the transaction mentioned by Thompson. The weakness of that view is that the added count was unrelated to the counts originally set forth in the petition. Thompson was not a party to the proceeding and it was not on his suggestion that the amendment was allowed. His only office was to act as a witness, and his testimony did not bear on the transactions which constituted the proceeding pending when his affidavit was obtained. The premise is unsound, and only by strained construction may respondent be held to have interfered with or obstructed a pending proceeding.

Aside from what I conceive to be our lack of jurisdic-

tion, the penalty adjudged seems excessive. Three hundred dollars is not a small sum and in these times a large one. Many men of more than usual stability would find it hard to pay that amount. The respondent is an ordinary artisan. Exaction of a nominal sum would, I believe, vindicate the court quite as effectively as the more excessive penalty, in the payment of which impoverishment may well result to the respondent and his dependents. To require such payment is in itself an unwarranted visitation by an all-powerful court on one who is helpless before it.

I would discharge the respondent.