**37 P.(2d) 240**

**LOPEZ v. MAES.**
**No. 3956.**

Supreme Court of New Mexico.

Oct. 22, 1934.

Myron B. Keator, of Tucumcari, for appellee.

HUDSPETH, Justice.

In a bastardy proceeding in the district court of Quay county under Laws 1923, c. 32 (1929 Comp. Stat. § 22-201 et seq.), a jury found that appellant was the father of appellee's illegitimate child. On the verdict the appellant was adjudged to pay to appellee; for the support of the child, $10 per month until the further order of the court. Some eighteen months later the appellant, after a hearing, was committed to jail for contempt of court, "until the further order of the court," for his admitted failure to comply with the judgment. From the commitment for contempt he appeals. His defense was inability by reason of poverty and want of employment to comply with the order of the court. The following appears in the findings and opinion of the court: "I say his conduct has been reprehensible. He testified on the trial of this case he had never had relations with the girl. The jury found to the opposite, and the jury were amply warranted in this under the evidence in the case, and in finding that the Defendant did not tell the truth." The quoted statement by the court, appellant maintains, is entirely foreign to the issues involved in the civil contempt proceedings brought to coerce performance by appellant; and in taking it into consideration the court committed reversible error. The appellee, while admitting that this is a civil contempt proceeding, argues that since the point was not objected to and specifically called to the attention of the trial court, it

J. V. Gallegos, of Tucumcari, for appellant.

cannot be raised here for the first time, and further: "The trial court had a right to take judicial notice of the matters and things brought directly before him in the hearings in this case, held prior to the last contempt hearing."

Perjury or false swearing by a witness, in most jurisdictions, is a contempt, and at least under some circumstances may be punished as such, although it may also be punished as a crime. Riley v. Wallace, 188 Ky. 471, 222 S. W. 1085, 1087, 11 A. L. R. 337, and annotation. It is probably the most frequent insult offered to justice.

Mr. Chamberlyne, in his Modern Law of Evidence, vol. 1, § 249, said: Section 249. "Of possible acts, few are so antagonistic to the objects of judicial administration as the intentional false swearing which seeks to baffle the search for truth, without which justice is impossible. Such swearing is a flagrant insult to the dignity of the court." It has been said: "If all perjury and false swearing could be dealt with as contempt of court, the deplorable prevalence of these offenses, which is universally admitted, might be expeditiously checked. But the courts have narrowly limited the scope of this summary remedy." Rowley, Summary Power of Courts to Punish Perjury and False Swearing as Contempt (1933) Cal. L. Rev. p. 582. And another writer has observed: "The truth seems to be that in daily practice both Bench and Bar have ceased to be shocked by ordinary false swearing. They may sometimes even laugh—as Jove did 'at lovers' perjuries.' Furthermore, the justices may reason that the false swearing may and should

be punished in a separate action, where all technicalities of proof may be availed of, and there is, theoretically, force in that argument; yet it is quite safe to say that if persons tried in that Court understood that upon conviction they would receive an enhanced punishment for defending by a false oath, perjury would be sensibly diminished in at least one tribunal. Moreover, as against the argument that a defendant's false swearing should only be weighed in a separate trial for perjury, it is to be observed that in small cases, though involving gross perjuries, which are none the less sturdy blows at the root of justice, prosecutors are not swift to persue the criminal." Purrington, The Frequency of Perjury (1908) 8 Col. L. Rev. p. 72.

But in order to justify the finding of one guilty of contempt in cases similar to the one at bar, the court should have judicial knowledge of the falsity of the testimony. This is lacking here. The learned trial judge was of the opinion appellant had sworn falsely, but the court had no judicial knowledge; and generally when the court has to weigh evidence, the offender is left to the criminal law.

In Riley v. Wallace supra, the court said: "If the petitioners were guilty as charged in the information, they should not go unpunished. The practice of attempting to secure court judgments upon false or fraudulent testimony should not and will not be tolerated, nor would we be understood as sanctioning such practice, or any semblance thereof, because it is deserving of the severest condemnation and censure. We only hold that the facts shown in the record before us

do not present a case justifying the procedure adopted. The chancellor could not judicially know the petitioners were guilty as charged. If the petitioners are thought to be guilty, that is a matter that should receive the consideration of the officers of the criminal court, and due notice of the facts should be brought to their attention for such action as may be deemed advisable."

 The bastardy statute did not enlarge the inherent power of the court to punish for contempt. State v. Magee Pub. Co., 29 N. M. 455, 224 P. 1028, 38 A. L. R. 142; Brown v. Hendricks, 102 Neb. 100, 165 N. W. 1075; State v. Kranendonk, 79 Utah, 239, 9 P.(2d) 176; Hemby v. State (Ark.) 67 S.W.(2d) 182, 183; Blankenburg v. Commonwealth of Mass., 272 Mass. 25, 172 N. E. 209, 73 A. L. R. 808 and annotation; Sinclair v. U. S., 279 U. S. 749, 49 S. Ct. 741, 73 L. Ed. 638, 63 A. L. R. 1258. We are constrained to hold that the trial court was without jurisdiction to punish appellant as for contempt on account of the alleged false swearing.

 On the question of appellant's ability to comply with the order of the court to make payments for the support of the child, the court found: "That the defendant has no property, either real or personal, and that he is without employment."

Reference was made to his relatives and friends and their ability to aid him; also, to the fact that he had the services of an attorney at this contempt hearing, and that he had been represented by counsel in all previous hearings. Appellant testified that he had tried to get work, and named several parties, among whom was the government CCC Camp commander, to whom he had applied. This testimony was uncontradicted. Apparently the court was of the opinion that appellant had not made proper effort to find employment.

Punishment for past offenses falls under the classification of criminal contempt, and the sentence must be for a definite period. Gompers v. Buck's Stove Co., 221 U. S. 418, 31 S. Ct. 492, 55 L. Ed. 797, 34 L. R. A. (N. S.) 874. Before appellant can be deprived of his liberty, the fact that he had willfully disobeyed the order of the court must be established. Without a scintilla of evidence contradicting his testimony, resort was necessarily had to inference or conjecture.

Civil contempt proceedings of this kind are similar to those brought for the purpose of coercing the payment of alimony. We recently held (Syl.): "Present ability to pay arrears of monthly sums allowed for support of children is essential to validity of a contempt sentence to continue until payment, and, where record shows that such sentence was imposed in absence of ability to pay, the sentence must be held for naught on habeas corpus." Ex parte Sedillo, 34 N. M. 98, 278 P. 202. This doctrine is supported by the weight of authority. State v. Kranendonk, supra; Hemby v. State, supra; Holcomb v. Holcomb, 53 Wash. 611, 102 P. 653; Snook v. Snook, 110 Wash. 310, 188 P. 502, 9 A. L. R. 262; Keck v. Keck, 219 Cal. 316, 26 P. (2d) 300; Schuele v. Schuele, 57 Ill. App. 189; Kemp v. Kemp, 144 La. 671, 81 So. 221; Id., 146 La. 361, 83 So. 652; Porter v. Porter 178 Ga. 784, 174 S. E. 527; Robertson v. State, 20 Ala. App. 514, 104 So. 561; Ex

528

parte Gunnels, 25 Ala. App. 577, 151 So. 605; Laff v. Laff, 161 Minn. 122, 200 N. W. 936; State v. Babcock (N. D.) 251 N. W. 849; State v. Dist. Court of 2d Judicial Dist., 37 Mont. 485, 97 P. 841, 15 Ann. Cas. 941; Ex parte Todd, 119 Cal. 57, 50 P. 1071; Allen v. Woodward, 111 Tex. 457, 239 S. W. 602, 22 A. L. R. 1253 and annotation. In Hemby v. State, supra, a similar case, the court said:

"The facts show that appellant is a boy 18 years of age, living with his father on the farm; that he earns no money and is supported by his father. He earns his board and clothes by his work on the farm, and is sent to school by his father at Delight. His father is a small farmer owning only a small amount of property of any kind. Appellant testified that he attempted to comply with the order of the court, but was unable to borrow the money to pay the amount of the judgment against him or to get anybody to sign his bond who could qualify for the amount thereof. There is no evidence contradicting this testimony. The question then is, Does the court have the power to commit for an indefinite length of time for failure to pay the amount adjudged against him and for failure to make the bond? The case of Land v. State, 84 Ark. 199, 105 S. W. 90, 91, 120 Am. St. Rep. 25, is quite similar to the case at bar. In that case the court, speaking through the late Chief Justice McCulloch, said:

" 'But it is said that, where the accused is unable to comply with the order, the result is to imprison him for an indefinite length of time, perhaps for life. * * *

" 'Imprisonment under this statute may be likened to that for failure, in a divorce case, to comply with an order of the court with respect to alimony. This court said, in a case of that kind, "that imprisonment in such a case is justified on the ground of willful disobedience to the orders of the court; and, so soon as it is made to appear that the defendant is unable to comply with the orders of the court, he should be discharged." Ex parte Caple, 81 Ark. 504, 99 S. W. 830.'

"But the very question which the court said was not in the case of Land v. State, supra, his ability or inability to comply with the order of the court, is the main issue in the case now before us, and, as above stated, his inability to comply is undisputed. If imprisonment under this statute is to be likened to that of failure in a divorce case to comply with an order of the court with respect to alimony and that imprisonment in such a case is justified only on the ground of willful disobedience to the order of the court, as held in the Land Case, then appellant undoubtedly should have been discharged. Our statute, section 778, Crawford & Moses' Dig., provides that, if the accused shall 'refuse or neglect' to enter into bond with security, etc., he shall be committed. We think the evidence conclusively shows that appellant has neither refused nor neglected to comply with the order within the meaning of the statute. It is shown that he tried to make the bond, but could not do so. He did not 'refuse,' because that word implies a willful disobedience. To neglect to do a thing implies negligence on the part of the person. Webster defines neglect as 'omis-

sion of proper attention; avoidance or disregard of duty, from heedlessness, indifference, or willfulness; failure to do, use, or heed anything; negligence; as, neglect of business, of health, of economy.' In New York Guaranty & Indemnity Co. v. Gleason, 53 How. Prac. (N. Y.) 122, it is said: 'What constitutes neglect or refusal? To neglect and to omit are not synonymous terms. There may be an omission to perform an act or condition which is altogether involuntary and inevitable; but neglect to perform must be either voluntary or inadvertent. To neglect is "to omit by carelessness or design" (Webster's Dictionary), not from necessity, and there can, therefore, be no possibility of neglecting to do that which cannot be done.' "

For the foregoing reasons the judgment committing appellant to jail for contempt should be reversed, and it is so ordered.

WATSON, C. J., and SADLER, BICKLEY, and ZINN, JJ., concur.