STATE ex rel CROOKS, Respondent, v. CUMMINS, Appellant.

(229 N. W. 302.)

(File No. 6836. Opinion filed February 21, 1930.)

*Dana Babcock,* of Sisseton, for Appellant.

*Turner & McKenna,* of Sisseton, and *Thos. Mani,* of Milbank, for Respondent.

CAMPBELL, J. This is a proceeding under the provisions of article 2 of chapter 295, Laws 1923 (Uniform Illegitimacy Act), seeking to establish that defendant was the father of relator's illegitimate child and to enforce his obligation to support such child. The verdict of the jury was in favor of plaintiff, and judgment was entered thereon, declaring the paternity of the child and requiring defendant to make certain payments for the support of the child, from which judgment, and from an order denying his motion for a new trial, defendant has appealed.

It became an issue in the case whether or not certain letters produced by relator and purporting to be written by appellant were in fact written by him. In this connection a witness, who sufficiently qualified himself prima facie as an expert in handwriting and investigation of questioned documents, testified that he had made a study and comparison of the letters in question (Exhibits 2 and 4) and the envelopes in which they were mailed (Exhibits 1 and 3) and had compared the same with reference to Exhibit 6 (an admittedly genuine signature and address of appellant written by him on a hotel register). The substance of the expert's testimony in this regard, given in the form of a deposition, was as follows: "I have made a study of the handwriting on the exhibits. I compared Exhibits 1, 2, 3, and 4, magnified them and charted them. I mean that I examined them with a magnifying glass and then made enlarged drawings on a chart. I have that chart with me. Exhibit 5 is the chart I had reference to. On this chart I wrote down some letters to bring comparisons of different exhibits closer together and also re-wrote part of the exhibits to become acquainted with the habitual movements of the writer of these exhibits, and also made it for the purpose of showing the court or jury these comparisons in better form. Every writer has habitual movements or characteristics which would distinguish his writing from other writings. I saw Exhibit 6, at the same time I saw the other exhibits. Exhibit 6 is a sheet from the Hotel St. Hubert, Milbank, South Dakota. I used the signature 'D. V. Cummins, Wilmot, S. D.,' on Exhibit 6 in making comparisons of the various writings on the exhibits you mentioned and in making the

chart. I formed my opinion as to these various exhibits after I had made a study of the penmanship thereof and had made comparisons."

■ Thereupon the witness, over objection of appellant, was permitted to testify that from his investigation and study it was his opinion that the admittedly genuine signature on the hotel register and the writing embraced in the questioned documents were the handwriting of one and the same person. The chart, Exhibit 5, referred to in the foregoing testimony of the expert, was also admitted in evidence over the objection of appellant, and upon these rulings appellant predicates error. That the opinion of the expert, based on the study and comparison shown by his previous testimony and his experiential capacity also previously shown, was admissible, is too obvious to require the citation of any authorities.

■ With reference to the admission of the chart, Exhibit 5, there is perhaps more ground for question. It is the almost unquestioned rule of modern authority that enlarged photographs of questioned writing are admissible in evidence when the foundation is properly laid. See Wigmore Evidence (2d Ed.) § 797, subd. 4; note, 31 A. L. R. 1431, at page 1437. With reference to enlarged drawings the point is not quite so clear. It has been held that the exclusion thereof does not constitute error. Ulmer v. Gentner (Pa. 1883) 3 Penny. 453. The chart, Exhibit 5, is not photographically reproduced in the briefs in this case, and the attempt to reproduce it by means of mere printed letters and figures is not helpful in showing us just exactly what this exhibit was. We think, however, that the previous testimony of the witness laid a sufficient foundation, prima facie, for the introduction of the chart by way of illustration and explanation of the testimony. McKay v. Lasher, 121 N. Y. 477, 24 N. E. 711; State v. Ryno, 68 Kan. 348, 74 P. 1114, 64 L. R. A. 303. It is conceivable that appellant by cross-examination before the chart was received in evidence might have developed facts concerning the nature, manner, and circumstances of its preparation which would have destroyed the prima facie foundation for its introduction found in the testimony in chief of the witness. Appellant made no effort so to do As the matter stood when the chart was offered we do not think receiving it in evidence constituted error.

■ Appellant predicates error on the giving of certain 'portions of the instructions to the jury and on the refusal of certain requests for instructions made by appellant. Reading the portions of the charge excepted to in connection with the charge as a whole, we think there was no error in the instructions given. The matters embraced in the instructions requested by appellant and refused by the court were adequately covered in the instructions given. The charge as a whole was full, fair, complete, and proper, and no error appears in reference to the instructions.

■ In this connection there is one particular objection to instructions that perhaps should have further attention. The court, over objection of appellant, instructed the jury that a verdict might be returned by five-sixths of their number (chapter 151, Laws 1923). We are of the opinion that proceedings under article 2 of the Uniform Illegitimacy Act (chapter 295, Laws 1923) are sufficiently of a civil nature so that a verdict therein may be returned by five-sixths of the jury, pursuant to chapter 151, Laws 1923, amending section 2515, R. C. 1919. See section 31, chapter 295, Laws 1923. State v. Pickering, 29 S. D. 207, 136 N. W. 105, 40 L. R. A. (N. S.) 144. The proceeding being civil in its nature, to permit a verdict therein by five-sixths of the jury is not repugnant to section 6, article 6, Constitution South Dakota. Weaver v. Cuff, 52 S. D. 51, 216 N. W. 600.

Appellant also assigns as error the insufficiency of the evidence to support the verdict. The evidence was to some extent conflicting, but there was ample testimony, if believed by the jury, to support the verdict, and we have neither power nor disposition to interfere therewith. Incidentally we might mention in this connection that although under the instructions of the court a five-sixth verdict was permissible, yet, as a matter of fact, the verdict was unanimous.

■ One of the grounds presented and urged upon the motion for new trial was newly discovered evidence. A considerable part of the newly discovered evidence is cumulative only, some of it is immaterial, and there is little, if any, showing that it could not, with reasonable diligence, have been discovered and produced at the trial. We do not think the learned trial judge abused his discretion in denying the application for new trial upon this ground.

██ Appellant also predicates error upon the conduct of one of the jurors, Van Horn by name. Appellant's showing in this regard is by the affidavit of one McInerney, who was a witness for appellant at the trial, and who thereafter made affidavit as follows:

"That in the morning of the first day of the trial, and before the trial started he met a man named Dick Van Horn in the lobby outside of the court room in Sisseton. That affiant did not know said Dick Van Horn, or know that he was on the jury panel; that said Van Horn started the conversation by asking affiant where he lived, and affiant told him he lived at Wilmot. Said Van Horn then stated to affiant that he lived at Corona and his name was Van Horn, and asked affiant's name, which affiant gave him. Said Van Horn then stated to affiant that he had a brother living in Wilmot. Affiant then told Van Horn that he was acquainted with his brother in Wilmot.

"Said Van Horn then continued to talk with affiant about various matters, and soon said to affiant, 'That Delbert Cummins case is the next case to come up. How do you think that case ought to go?' That affiant then said to said Van Horn, 'I have no idea.' Said Van Horn then continued to talk about the case and stated to affiant among other things, 'I am on the jury, but I do not know whether I will be on that case or not. I think young Cummins ought to marry that girl. When a girl gets in trouble like that she needs somebody to take care of her.' Said Van Horn talked some more about a girl needing somebody to take care of her when she' was in such trouble, and repeated several times the statement that Cummins ought to marry the girl.

"After said Van Horn informed affiant that he was on the jury affiant did not make any further reply to him.

"That not very long after hearing the above statements from said Dick Van Horn, affiant was in the court room where the above entitled case was tried and saw said Van Horn called as a prospective juror, and heard said Van Horn when examined as a prospective juror testify that he had no opinion as to the merits of the case or how it should be decided, and saw said Van Horn accepted as a juror, and saw him sitting in the jury box as one of the trial jurors during the trial."

The juror Van Horn denied this transaction, and made affidavit substantially as follows:

"That before the trial of said action, he was not acquainted with and did not know either Ruth Crooks or Delbert Cummins and knew nothing about the facts concerning the case, nor the names of witnesses of either party, neither did he know John McInerney, whose affidavit is produced by the defendant upon his motion for a new trial in the above entitled action. That he has no recollection of having any talk or conversation with the said McInerney with reference to the trial of the above case, nor does he recall any other person who had spoken to him with reference to said trial. Affiant does not recall having made any statement to McInerney as stated in said affidavit 'that I think young Cummins ought to marry that girl,' or words to that effect. That upon questions as to his qualifications he made truthful answers to each and every question propounded to him. That he voted in accordance with what he believed to be the rights of the parties, based solely upon the evidence and the instructions of the court, and that the verdict of the jury in his opinion is in accordance with the evidence in the case."

Under all the circumstances of this case, and upon the showing above set out, we are not persuaded that the learned trial judge abused his discretion when he refused to grant a new trial upon this ground.

Finding no error in any of the matters presented by appellant's assignments, the judgment and order appealed from are affirmed.

BROWN, P. J., and POLLEY, SHERWOOD, and BURCH, JJ., concur.