## STATE v. DALE STRONG.[1]

October 19, 1934.

No. 30,036.

*Lewis E. Jones,* for appellant.
*Louis J. Pluto,* County Attorney, for the state.

*JULIUS J. OLSON, Justice.*

From an order of the district court of Todd county, Roeser, Judge, sentencing defendant to the common jail of that county for a

[1]Reported in 256 N. W. 900.

period not exceeding six months and directing immediate commitment thereto for contempt of court, he appeals.

Defendant was adjudged to be the father of an illegitimate child and was ordered and required to pay $277.50 for lying-in expenses and for the care of the child up to the time of the decree, for costs and disbursements $55.12, and the further sum of $15 per month thereafter for the child's support. The court fixed the amount of defendant's bond in the sum of $1,000. The proceedings were had pursuant to 1 Mason Minn. St. 1927, § 3265. The defendant failed to meet the requirements aforesaid and was accordingly committed to the county jail for a period of 90 days. Having served this period of time, he was released by an order of the court. 1 Mason Minn. St. 1927, §§ 3267-3268. Before this difficulty arose defendant had been employed by the Gamble Stores. Because thereof and the subsequent jail sentence, he lost his position. Thereafter the court, upon application of the county attorney in January, 1934, issued an order requiring that a warrant be issued for the arrest of defendant and that he be brought before the court to answer the charge that he had failed to make the payments referred to in the decree. The proceedings were based upon affidavits made by the county attorney, the complaining witness, and her father. The sole ground for so proceeding was that defendant had failed to pay any part of the sums of money mentioned in the decree of paternity.

At the time and place set for the hearing defendant appeared with his attorney. He offered oral testimony and was supported in that respect by his sister. The facts disclosed are substantially these: When he was let out of jail he had no money nor did he have a job. Prior to his trial he had married, and as a result of that union, prior to the time of the hearing last mentioned, a child had been born to them. His sister, testifying at the trial, summarized the situation very clearly:

A. "Well, at the time he was let out of jail he did not have any money and did not have any job, and his wife's folks, her folks, did not have any money, not enough to take care of themselves, so I had him come up there to Wheaton and I employed him there, not

solely because I absolutely had to have him but to give him some place to live.

Q. "And you paid him $20 a month?

A. "At first we lived as one family, and he did not draw any wages at all from the first of July until along in September; we lived as one family and ate at one table and worked in the same place.

Q. "And you furnished the maintenance for them?

A. "Yes, out of the shop, and after that time I could not afford to keep up the house and the shop also, and I had gotten a lease on the shop building at that time and there were rooms up over the place so we moved up there and my brother, I gave him three rooms, for he and his wife, and we have the balance of them.

Q. "And what is it he pays for the three?

A. "He pays me $5 a month.

Q. "For rent?

A. "For rent.

Q. "And you furnish the light?

A. "Light and heat and water.

Q. "And you paid him $20 a month?

A. "Yes, I paid him in wages $5 a week.

Q. "Do you know of your own knowledge whether or not he has any other means of support except this $20 a month?

A. "He has absolutely nothing."

The only cross-examination attempted is the following:

Q. "You paid him $20 a month besides the rent?

A. "I paid him $20 a month, and he pays me $5 of that $20 on the rent and that included his heat, light and water."

Defendant also testified, and his testimony fully corroborates and further details his difficulties. There is nothing to controvert the claims made in defendant's behalf. Nevertheless the court found the defendant guilty of contempt and sentenced him to the common jail of Todd county for a period not exceeding six months and ordered immediate commitment.

Only one question is involved, namely, was the court justified, in view of the facts appearing, to make the order it did?

The statute under which the proceeding is had is found in 2 Mason Minn. St. 1927, § 9804, and is as follows:

·"Whenever the contempt consists in the omission to perform an act which is yet in the power of the person to perform, he may be imprisoned until he performs it, and in such case the act shall be specified in the warrant of commitment."

As long ago as Register v. State, 8 Minn. 185 (214), it has been the settled law of this state that "a person cannot be punished for contempt in not obeying an order which it is not in his power to obey." Since then many cases have been decided by this court sustaining this view. Hurd v. Hurd, 63 Minn. 443, 65 N. W. 728. In Laff v. Laff, 161 Minn. 122, 124, 200 N. W. 936, 937, it was said:

"Civil contempt proceedings may not be used to compel a party to do that which is beyond his ability. It is only when it is yet within the power of the person to perform the omitted act that he may be imprisoned until performance."

In Cohen v. Mirviss Mfg. Co. 173 Minn. 100, 216 N. W. 606, it was said:

"In such a proceeding one cannot be imprisoned when unable to pay. He can be imprisoned only when he can pay but will not."

In other jurisdictions the same rule prevails. See Maryott v. State, 124 Neb. 274, 246 N. W. 343; Zitlow v. State, 213 Wis. 493, 252 N. W. 358.

While the burden of proof rested upon defendant to prove his inability to pay, yet the fact remains that upon undisputed testimony, fair and reasonable on its face, defendant has amply met that burden and has effectively purged himself of contempt.

It necessarily follows that the sentence and order for commitment must be and hereby are reversed.