STATE ex rel. PAULINE BISSELL, Appellee, v. ARLEY DEVORE, Appellant.

Nos. 44407, 44452.

OCTOBER 18, 1938.

Ned B. Turner, County Attorney, and Ed Fackler, for appellee.

O. M. Slaymaker, R. E. Killmar, and D. D. Slaymaker, for appellant.

ANDERSON, J.—■■■ This is an appeal from a judgment rendered in an action to determine the paternity of a child born out of wedlock and involves, among other things, a determination as to the constitutionality of ch. 544-A1 of the 1935 Code of Iowa. The chapter in question is not found under Title 35 of the Code

relating to criminal law and public offenses and it is, in fact, a special proceeding designed particularly and only for the purpose of establishing paternity and providing for the support of illegitimate children. It is not a criminal proceeding and is tried as an ordinary action. The chapter was enacted by the 41st G. A. The enactment repealed chapter 544 known as ''Bastardy Proceedings'' which had been the statutory remedy with slight change since the second territorial legislative assembly and appeared for the first time in the Revised Statutes of 1843 as chapter 52. The title to that act was ''An Act to Provide for the Support of Illegitimate Children'' and section 5 of the act provided for judgment to be entered against the person accused of being the father, in the event of such a finding by a jury, for the costs of prosecution and the expense for the maintenance of such child in such sum or sums as the court might order, and that the defendant should be required to give security to perform the order of the court. And the act further provided that:

''In case the reputed father shall refuse or neglect to give security as aforesaid, and pay the costs of prosecution, he shall be committed to the jail of the proper county, there to remain until he shall comply with the order of the court, or until such court shall, on sufficient cause shown, direct him to be discharged.''

In the present act, sections 12667-a35 to -a44, inclusive, we find provisions practically the same as those quoted above from the Revised Statutes of 1843, and these are the provisions with which we have to do in the disposal of this appeal. The act as originally appearing in the Revised Statutes of 1843 was held unconstitutional by this court in the case of Holmes v. State, 2 G. Greene (Iowa) 501, to which we will later refer. The mandate of the supreme court as contained in the Holmes decision was obeyed by the General Assembly and the penal provisions of the original act were omitted from the Code of 1851, §848 et seq., and no subsequent legislature attempted to ignore that mandate until the present existing act was passed by the 41st G. A. in the year 1925. The act as appearing in the Code of 1851 continued in the Revision of 1860, §1416 et seq., in the Code of 1873, §4715 et seq., in the Code of 1897, §5629 et seq., and in the Code of 1924, §12658 et seq. And, as we have indicated, remained the settled statutory law of Iowa until its repeal by the 41st G. A. which enacted in its

stead ch. 544-A1, and now appears under that title in the Code of 1935.

The defendant in this case was charged in the district court of Adams County with being the father of an illegitimate child born to one Pauline Bissell in April, 1937. The complaint was filed by Pauline Bissell as the mother of the illegitimate child and prayed that the defendant be required to answer the complaint; that she have judgment declaring the paternity of said child; and that she have judgment for the necessary expense incurred in connection with the birth of said child, and for judgment in the sum of forty dollars per month for the support of said child until it reaches the age of sixteen years, "and prays for such other orders by the court as the court may deem just and equitable in the premises." The defendant appellant by answer generally denied the allegations of the complaint. There was a trial to a jury resulting in a verdict finding the defendant "guilty of being the father of an illegitimate child * * * and liable for its support." Upon return of this verdict the court pronounced a judgment decreeing that the defendant Arley Devore is the father of the illegitimate child involved in the action. And the trial court went further than this and made the following additional finding and pronouncement:

"The Statute provides that in a case of this kind where the man is found to be the father of the child that he must furnish support for the child in a reasonable amount. Now, that altogether depends upon the things surrounding the child and things surrounding the defendant and his ability to pay. Mr. Stanley says he has no money or property at this time, so the only thing the Court can do is to order he furnish a bond for support. I am going to provide that he shall pay the costs of confinement of the mother of $93.00, then I am going to provide that he will pay at the rate of $10.00 per month from the birth of the child till the first of January, 1938, for which sum the judgment will be entered at this time. Then I am providing that he must pay $10.00 per month payable quarterly, that is four times a year, to the Clerk of this Court for the aid and benefit of the mother Pauline Bissell until this child reaches the age of sixteen years. Judgment entry will also provide that if this defendant is unable or unwilling to pay the confinement charges and the support money at this time that he must be confined in

the jail of this County unless he gives a bond conditioned to pay those charges and the continuing charges during the period of time until the child reaches the age of sixteen years, then the order will be and mittimus will issue for the confinement of this boy in jail for one year's time. I want to say to him and his folks that may be here, the confinement in the jail, if he does go to jail, doesn't discharge the judgment, it will always be over him, then at the end of that period of time he could be charged with child desertion just as often as he didn't pay, he could be committed to the penitentiary for failure to support this child, so it wouldn't gain him anything or wouldn't gain his people anything by allowing him to go to jail here, a year in jail, because at the end of that time he could be charged with child desertion, and just as often as he didn't pay for the support of the child he could be committed all the time up to the time this child is sixteen years of age. But that will be the order. I have drawn a tentative form of judgment order, Mr. Turner, and this boy will be in the custody of the Sheriff then, until this bond is given conditioned to pay these amounts. You see that the Sheriff takes charge of him, mittimus will issue.

''I don't think the Court could imprison him, the cost of the action might be a judgment against him, but for these amounts he will have to go to jail, and then he will have to stay in jail for a year's time if he doesn't continue to meet these payments. If the bond is filed with sureties approved by the Clerk, I want you men to prepare the proper form of bond. It must be conditioned he will meet these payments promptly and the Clerk of the Court will see that proper sureties go on it.''

At the close of the quoted pronouncement by the court, Attorney Fackler, who was special assistant to the county attorney in the trial of the case, made the following announcement:

''For the benefit of parties on both sides, if your Honor please, I want it understood unless these conditions are met the defendant can expect to spend his next sixteen years in either the penitentiary or county jail.''

On the same day of the foregoing quoted finding and pronouncement of the court a formal order was prepared and filed in the office of the clerk of the trial court entering judgment

against the defendant in the amount indicated in the quoted order and further ordering that the defendant file a bond with sureties conditioned that he would pay the judgment entered against him, and that upon his failure so to do that the clerk issue a mittimus directing the sheriff to confine the defendant in the county jail "for one year's time at hard labor, or until the judgment is paid and a bond filed and approved as above set forth."

Immediately following the proceedings had in the court room on December 3, 1937, as we have above quoted, a mittimus was issued and the defendant was committed to the county jail, and we find from the abstract that the defendant remained a prisoner in the county jail at least up until the filing of the abstract, March 28, 1938, and there is no showing that he has ever been released. From the above proceedings the defendant has appealed to this court and at the same time sued out a writ of certiorari. The appeal and the issues joined in the certiorari proceeding are submitted together and we will dispose of the case on the appeal only as such disposal will determine all of the questions raised in the certiorari proceedings.

The appellant complains that the judgment directing his imprisonment for failure to pay, as indicated in the order, is erroneous and that the provisions of ch. 544-A1, providing for such punishment is in contravention of Art. I, section 19, of the Constitution of the State of Iowa, and therefore invalid.

The section of the Constitution referred to provides that no person shall be imprisoned for debt in any civil action, and we are in agreement with the appellant as to this contention. The case of Holmes v. State, supra, as well as many other cases in this and other jurisdictions determine the question raised by this assignment of error adversely to the claim of the appellee. As said in the Holmes case, the charge of bastardy in itself is in no sense of a criminal nature. The defendant has not violated any criminal or penal statute. He could not have been indicted or punished in any manner as a criminal offender. The statute simply provides a remedy summary in its character to determine the paternity of an illegitimate child and relieve the mother, and possibly the public, to a certain extent, from the cost of its maintenance and support. So, the judgment of the court ordering confinement of the defendant until he should comply with the conditions of the order is not the infliction of punishment for a

criminal offense but at most a punishment for not complying with the order of the court.

The act provides that the court may require security for the payment of the judgment of support and that in default of such security the court may commit the defendant to jail and "after one year the person so committed *may* be discharged * * *." Code 1935, §12667-a41. There is a further provision of the act attempting to extend to the court the power to adjudge the defendant guilty of contempt and to order him committed to jail therefor in the same manner as in the case of commitment for default in giving security.

In the instant case it will be noted from the record in the trial court, as we have heretofore quoted, that no citation or charge or hearing was had on any contempt charged and the defendant was not permitted an opportunity to purge himself of any alleged contempt. And while the order of the court indicated that he would be confined to the county jail if he did not pay the judgment and secure the future payments by January 1st following, yet, the mittimus issued on December 3d, the same day the order was entered and the defendant was committed to jail, so that the defendant had no opportunity to raise or earn money to pay the judgment and no opportunity, before the commitment, to furnish the security required by order of court.

The pronouncement in the Holmes case, supra, is still the law of this state and has been referred to in many subsequent cases. However, without such precedent we would be impelled to hold the criminal features of the present statutory provisions here in question unconstitutional.

The appellant also contends that the act is in violation of Art. I., section 17, of the Constitution of Iowa in that it provides for punishment which is cruel and unusual. And with this contention we are also inclined to agree. Not only the statement of the court at the time of imposing the penalty but also the unwarranted and intimidating statement of the assistant county attorney when he said, "I want it understood unless these conditions are met the defendant can expect to spend his next sixteen years in either the penitentiary or county jail" indicates to what an unusual extent the punishment may be carried. And if the assistant county attorney is permitted to carry out his expressed threat then the defendant will be restrained of his liberty for sixteen years. Again the statute itself, section 12667-a41, provides

that "after one year the person so committed *may* be discharged * * * ." So that, it is apparently left up to the trial court to terminate the imprisonment. We cannot believe that the legislature had in mind any such construction of the language of this statute as has been made in the instant case. The appellee contends that the statutes under consideration are analogous to the statutes in relation to divorce actions where a statutory contempt is provided for, but the statute in question is not at all analogous to section 10482 of the Code which provides for contempt for a failure to comply with a divorce decree for the payment of alimony or the maintenance of children. That section provides for a contempt proceeding upon citation and a hearing, and if a showing is made that the order of the court has been willfully disobeyed by the defendant that he might be adjudged guilty of contempt and punished accordingly. In the present act there is no provision for a citation for contempt or a hearing and no provision that the failure to comply with the civil order of the court must be willful, and no provision permitting the defendant to purge himself of any contempt.

There are other questions raised by the appellant touching the validity of the act in question, but in view of our conclusion, as indicated in the preceding part of this opinion, it will be unnecessary for us to notice other alleged errors.

We are satisfied that the action brought in this case was a civil suit and that the defendant was exempt from punishment as in a criminal case, and we are constrained to hold that the judgment and order of the court imprisoning the defendant or finding him guilty of contempt was erroneous and such order or orders must be reversed. In so holding it is our finding and pronouncement that the sections of ch. 544-A1 providing for punishment by commitment to jail or by commitment to a custodian or by commitment for contempt are in contravention of the Constitution of Iowa and absolutely void.

The reversal above announced also disposes of the certiorari case No. 44452 with which the instant case was consolidated.— Reversed.

SAGER, C. J., and MITCHELL, HAMILTON, STIGER, RICHARDS, and DONEGAN, JJ., concur.