ACKER, Respondent, v. ADAMSON, et al, Appellants

(293 N. W. 83.)

(File No. 8320. Opinion filed June 27, 1940.)

**E. D. Barron, Parliman & Parliman,** and **Raymond E. Dana,** all of Sioux Falls, for Appellants.

**Jerry Maher** and **T. R. Johnson,** both of Sioux Falls, for Respondent.

RUDOLPH, J.  Erwin Acker, the plaintiff herein, was complained against under the Uniform Illegitimacy Act, Chapter 295, Laws of 1923 (SDC 37.21).  The jury returned a verdict against him.  Judgment was entered upon the verdict and as a part of this judgment it was ordered that the said Acker give security by bond with sureties for the payment of the judgment, and in the default of such security that he be committed to jail.  The bond was not furnished as required by the judgment, and on December 1st, 1938, Acker was committed to the county jail.  He remained in jail until the first day of May, 1939, when he commenced these present proceedings in habeas corpus directed against the sheriff and state's attorney of Minnehaha County.  Hearing was had before the circuit court and the court found that the said Acker was unable to comply with the judgment and furnish the security ordered and, upon such finding, the court ordered his release from jail.  The defendants have appealed.

Section 23, Chapter 295, Laws of 1923 (SDC 37.2123) provides, as follows:  "The Court may require the father to give security, by bond with sureties, for the payment of the judgment.  In default of such security, when required, the Court may commit him to jail.  After one year the person so committed may be discharged in accordance

with the law relating to the discharge of insolvent debtors, but his liability to pay the judgment shall not be thereby affected."

It was under this provision of the law that Acker was committed, and it is respondent's principal contention here that commitment thereunder was unlawful for the reason that the said section of the law is unconstitutional in that it constitutes imprisonment for debt in contravention of Article 6, Section 15, Constitution of South Dakota, and further that if the said section is otherwise constitutional it contravenes Section 23 of Article 6, Constitution of South Dakota, which prohibits the infliction of cruel punishment. Respondent's contention that the statute constitutes an imprisonment for debt finds some support in the case of State ex rel. Bissell v. Devore, 225 Iowa 815, 281 N. W. 740, 118 A. L. R. 1104. However, it appears that the South Dakota Constitution differs materially from that of the state of Iowa. Our constitutional provision is, as follows: "No person shall be imprisoned for debt arising out of or founded upon a contract." Article 6, § 15.

The Iowa Constitution provides: "No person shall be imprisoned for debt in any civil action." Article 1, § 19.

This distinction was noted by the Indiana court in the case of Lower v. Wallick, 25 Ind. 68, wherein the Indiana court said: "It will hardly be pretended that the liability under that act is a debt created by contract, either express or implied. The obligation of the father to maintain his children is founded in nature, and not in contract."

A great weight of authority is that liability under the Uniform Illegitimacy Act does not constitute a debt within the meaning of the constitutional provision against imprisonment for debt. See Annotation 118 A. L. R. 1109. The reasoning of the North Dakota court in the recent case of State v. Hollinger, 287 N. W. 225, 227, finds support, we believe, both in reason and authority. The North Dakota court said: "The duty of a father to support his illegitimate child is not dependent upon contract. The relation of debtor and creditor does not exist between the father and the mother, between the father and the State, or between the

father and his child. The obligation of the father to provide for his child in such case rests upon a foundation more elemental than that upon which a contract rests. It is a moral obligation which he owes both to society and to the child, and the Legislature has wide powers in fixing the extent of the legal obligation that results, and it has power to prescribe the method by which that duty may be enforced, subject only to the limitation upon legislative power fixed by the Constitution. The Legislature may, if it so desires, prescribe that the obligation shall be enforced by a criminal action, or by a civil action, or by an action neither wholly criminal nor wholly civil, but having features and incidents of each. For as was well said by the great Chief Justice: 'Let the end be legitimate, let it be within the scope of the constitution, and all means which are appropriate, which are plainly adapted to that end, which are not prohibited, but consistent with the letter and spirit of the constitution, are constitutional.' McCulloch v. Maryland, 4 Wheat 316, 421, 4 L. Ed. 579."

We hold, therefore, that the liability imposed under the Uniform Illegitimacy Act does not constitute a debt within the meaning of the constitutional provision against the imprisonment for debt arising out of contract, and that there was no violation of this provision in the enactment of the said Section 23, Chapter 295, Laws of 1923 (SDC 37.2123). Neither do we believe that the enactment of this section constitutes cruel punishment within the constitutional inhibition. The imprisonment is for the purpose of coercing the father to give the required security, but assuming that such imprisonment might be considered punishment within the constitutional provision, nevertheless, the statute specifically provides that after being committed one year the person committed may be discharged in accordance with the laws relating to the discharge of insolvent debtors. Whether the court has authority to discharge the committed person prior to the expiration of the year upon the showing of complete inability to comply with the judgment, we need not now determine for we are satisfied that the limitations upon the imprisonment contained in the paragraph of said

Section 23, which we have quoted, and the succeeding paragraph of that section, must refute any contention that the law is in contravention of the constitutional provision relating to cruel punishment. Cf. 7 Am. Jur., Bastards, § 133.

■ It has been suggested that the law under which Acker was imprisoned infringes upon the inherent power of the court to commit for contempt. We do not agree. Contempt must find its basis in the willful or contumacious refusal to comply with an order of the court. Nash-Finch Co. v. Raich, 66 S. D. 521, 286 N. W. 326. The statute under which the respondent was committed makes no reference to the willful or contumacious refusal to furnish security, but provides that, upon the mere default to furnish security, the father of the child may be committed. Quite obviously, the legislative method adopted for the enforcement of the requirement that a bond for support be furnished differs materially in its nature from the power of the court to commit for contempt for the failure to furnish such a bond. It might well be that within the purview of its inherent powers, the court in a bastardy proceeding, in addition to the means of enforcement provided by the legislature, could commit as for contempt for the failure to furnish a bond ordered to be given for the payment of the judgment if the essentials of contempt are present. However, in this case we need not so decide because Acker was committed under the provisions of the legislative enactment.

■■ It is elementary that the legislative power of state legislatures is unlimited except as limited by the State or Federal Constitutions. State ex rel. Wagner v. Summers, 33 S. D. 40, 144 N. W. 730, 50 L. R. A., N. S., 206, Ann. Cas. 1916B, 860. We are unaware of any constitutional provision other than those here discussed which would limit the authority of the legislature to coerce the payment of the liability determined under the provisions of the Uniform Illegitimacy Act, and it follows therefore that the commitment of this plaintiff under the provisions of that act was, in our opinion, lawful.

■ We consider now the nature of the proceeding which is habeas corpus. This proceeding constitutes a col-

lateral attack on the judgment and the writ in this respect deals only with such radical defects as render the proceeding or judgment absolutely void. SDC 37.5504(1); State ex rel. Anderson v. Jameson, 51 S. D. 540, 215 N. W. 697. Whether a judgment is absolutely void depends, no doubt, upon whether the court had jurisdiction to act. However, this jurisdiction is not dependent entirely upon whether the court had the parties properly before it and had the general power to act in the illegitimacy proceeding. But jurisdiction in this respect goes to the further question of whether the court had the power to render the particular judgment which it did render. In re Taber, 13 S. D. 62, 82 N. W. 398; Reddin v. Frick, 54 S. D. 277, 223 N. W. 50. From what we have said above it appears that, in our opinion, the court was acting within its jurisdiction in rendering the judgment that was rendered. The proceedings under the illegitimacy act were in all respects regular and in conformity with the statute. Even conceding for the purposes of this opinion that under the statute it might be within the authority of the trial court in a proper proceeding to release the defendant upon a showing of complete inability to comply with the judgment before the year prescribed by the statute has expired, nevertheless, such issue cannot be raised in habeas corpus. Whether the defendant would be subject to release before the expiration of the year, if he is so subject, in any event must be dependent upon the sound judicial discretion of the trial court. This discretion should be exercised by the trial court in a proper proceeding. Whether the defendant should be released in such a proceeding would not be a test for determining the validity of the judgment under which he was committed.

SDC 37.5504(2) provides that the writ should be granted "Where, though the original imprisonment was lawful, yet by some act, omission, or event, which has subsequently taken place, the party has become entitled to his discharge." This subdivision is not applicable to the present situation. The original imprisonment here was lawful, and if Acker was subject to release prior to the statutory year, he was so subject only when the trial court in the

exercise of its discretion in a proper proceeding so determined, which event has not taken place.

The judgment appealed from is reversed.

SMITH, P.J., and POLLEY and ROBERTS, JJ., concur. WARREN, J., dissents.

WARREN, J. (dissenting)   Several states, including our state, enacted what is known as the Uniform Illegitimacy Act.   The construction given by the courts of the states having this Uniform Act are not in full accord and agreement as to the construction to be placed upon the seeming requirement of § 23, Chapter 295, South Dakota Session Laws 1923, which reads:   "* * * After one year the person so committed may be discharged in accordance with the law relating to the discharge of insolvent debtors * * *."

Our sister state of North Dakota in State v. Hollinger, N. D., 287 N. W. 225, holds that the extent of the legal obligation of the parent to his child and the manner of performance of that obligation are matters primarily for the legislature and that the judgment for the support by the father of such child is not in a proper sense a debt.   I do not believe that we may rest our decision without making further inquiries upon the power of the legislature in enforcing the performance of the obligations of a putative father.   Shortly prior to the decision of State v. Hollinger, supra, the Supreme Court of our sister state of Iowa considered this same section of the Uniform Illegitimacy Act first enacted by them in 1925, in State of Iowa ex rel. Bissell v. Devore, 225 Iowa 815, 281 N. W. 740, 118 A. L. R. 1104, and reached an exactly opposite conclusion to State v. Hollinger, supra, in the construction of this same statute holding that the statute was a violation of Art. 1, § 17 of the Constitution of Iowa.

Our circuit court's power to punish in cases of contempt we believe cannot be successfully challenged.   To me it seems an inherent power and has been held to exist with reference to constructive as well as direct contempt.   Such power of courts is essential to the due administration of justice.

"The power to punish for contempt emanates from the court, and not from the lawmaking power created by the Constitution. * * * The relation of the power to the effective and impartial administration of justice is such as to be essential to it. * * * And since the power is essential, the Legislature can no more deprive courts created by the Constitution of it than they can deprive them of the power to perform the judicial function." State v. Magee Pub. Co., 29 N. M. 455, 224 P. 1028, 1041, 38 A. L. R. 142, 162 and see citations following the excerpts of the above quotations.

In Fritz v. Fritz, 45 S. D. 392, 394, 187 N. W. 719, 720, this court said: "That the trial court possesses the inherent power to punish contempts by fine or imprisonment was settled by this court in State v. Knight et al., 3 S. D. [509] 518, 54 N. W. 412, 44 Am. St. Rep. 809." See, also, State v. American-News Co., 62 S. D. 456, 253 N. W. 492. The Supreme Court of Wisconsin in State v. Cannon, 196 Wis. 534, 221 N. W. 603, at some length defined the meaning of inherent power of courts to punish for contempt, and I quote:

"From time immemorial, certain powers have been conceded to courts, because they are courts. Such powers have been conceded, because without them they could neither maintain their dignity, transact their business, nor accomplish the purposes of their existence.

"These powers are called inherent powers. In re Court Room and Offices of Fifth Branch Circuit Court, 148 Wis 109, 121, 134 N. W. 490, 495 (Ann. Cas. 1913B, 98) it was said: 'The authorities, in so far as any can be found on the subject, are to the effect that a constitutional court of general jurisdiction has inherent power to protect itself against any action that would unreasonably curtail its powers or materially impair its efficiency. A county board has no power to even attempt to impede the functions of such a court, and no such power could be conferred upon it.'

"In In re Bruen, 102 Wash. 472, 172 P. 1152, the Supreme Court of Washington said: 'The inherent power of the court is the power to protect itself; the power to administer justice whether any previous form of remedy had been granted or not; the power to promulgate rules for its prac-

tice; and the power to provide process where none exists. It is true that the judicial power of this court was created by the Constitution, but, upon coming into being under the Constitution, this court came into being with inherent powers.' "

See, also, 17 C. J. S. Contempt, pages 55-61, §§ 43-45, § 62, 13 C. J. 46-48.

"Such power is indispensable to the administration of the law, and the exercise of such power was contemplated by the people when, by their constitution, they created courts, and conferred upon them general jurisdiction in both law and equity." State v. Crum, 7 N. D. 299, 74 N. W. 992, 994.

The Supreme Court of New Mexico dealing with the Uniform Illegitimacy Act, adopted in 1923, in the case of Lopez v. Maes, 38 N. M. 524, 37 P.2d 240, 241, held:

"On the question of appellant's ability to comply with the order of the court to make payments for the support of the child, the court found: 'That the defendant has no property, either real or personal, and that he is without employment.'

"Reference was made to his relatives and friends and their ability to aid him; also, to the fact that he had the services of an attorney at this contempt hearing, and that he had been represented by counsel in all previous hearings. Appellant testified that he had tried to get work, and named several parties, among whom was the government CCC Camp commander, to whom he had applied. This testimony was uncontradicted. Apparently the court was of the opinion that appellant had not made proper effort to find employment.

"Punishment for past offenses fall under the classification of criminal contempt, and the sentence must be for a definite period. Gompers v. Buck's Stove Co., 221 U. S. 418, 31 S. Ct. 492, 55 L. Ed. 797, 34 L. R. A., N. S., 874. Before appellant can be deprived of his liberty, the fact that he had willfully disobeyed the order of the court must be established. Without a scintilla of evidence contradicting his

testimony, resort was necessarily had to inference or conjecture.

"Civil contempt proceedings of this kind are similar to those brought for the purpose of coercing the payment of alimony. We recently held (Syl.): 'Present ability to pay arrears of monthly sums allowed for support of children is essential to validity of a contempt sentence to continue until payment, and, where record shows that such sentence was imposed in absence of ability to pay, the sentence must be held for naught on habeas corpus.' Ex parte Sedillo, 34 N. M. 98, 278 P. 202. This doctrine is supported by the weight of authority. State v. Kranendonk, supra [79 Utah 239, 9 P.2d 176]; Hemby v. State, supra [188 Ark. 586, 67 S. W. 2d 182]; Holcomb v. Holcomb, 53 Wash. 611, 102 P. 653; Snook v. Snook, 110 Wash. 310, 188 P. 502, 9 A. L. R. 262; Keck v. Keck, 219 Cal. 316, 26 P.2d 300; Schuele v. Schuele, 57 Ill. App. 189; Kemp v. Kemp, 144 La. 671, 81 So. 221; Id., 146 La. 361, 83 So. 652; Porter v. Porter, 178 Ga. 784, 174 S. E. 527; Robertson v. State, 20 Ala. App. 514, 104 So. 561; Ex parte Gunnels, 25 Ala. App. 577, 151 So. 605; Laff v. Laff, 161 Minn. 122, 200 N. W. 936; State v. Babcock [64 N. D. 288] 251 N. W. 849; State v. Dist. Court of 2d Judicial Dist., 37 Mont. 485, 97 P. 841, 15 Ann. Cas. 941; Ex parte Todd, 119 Cal. 57, 50 P. 1071; Allen v. Woodward, 111 Tex. 457, 239 S. W. 602, 22 A. L. R. 1253 and annotation."

The case of Hemby v. State, 188 Ark. 586, 67 S. W.2d 182, 183, quoted by the New Mexico Supreme Court at some length at pages 528 and 529 of 38 N. M., 37 P.2d at page 240, is so squarely in point and the reasoning so cogent to the case before us that to pursue and review the evidence before us would merely lengthen this dissent. I do not believe that it is necessary to disturb the trial court's findings and conclusions as to this young man's inability to pay. The evidence of his default seems excusable and the eminent trial court so found and we should not disturb its findings. State v. Babcock, 64 N. D. 288, 251 N. W. 849, 852; Brown v. Hendricks, 102 Neb. 100, 165 N. W. 1075; Commonwealth ex rel. Powell v. Ross, 277 Ky. 212, 126 S. W.2d 150; Peak v. Calhoun, 63 App. D. C. 113, 69 F.2d 989; State v. Bartholo-

mew, 85 Utah 94, 38 P.2d 753; State v. Strong, 192 Minn. 420, 256 N. W. 900; State v. Kranendonk, 79 Utah 239, 9 P. 2d 176; State ex rel. Cottrill v. Jarvis, W. Va., 5 S. E.2d 115.

This court has in a number of decisions held that proceedings under the Uniform Illegitimacy Act are civil in nature. State ex rel. Crooks v. Cummings, 56 S. D. 439, 229 N. W. 302; State ex rel. Schumacher v. Schumacher, 61 S. D. 51, 245 N. W. 926. The illegitimacy act proceedings having been held civil in its nature it seems logical that respondent having been proceeded against under this statute and having been committed to jail pursuant to § 23 thereof, and having made proper showing, must be entitled to secure his discharge and is entitled to release therefrom for the reason that § 23 of the Uniform Illegitimacy Act requiring that a person must be confined in jail for a period of one year before the application, release and discharge can be made, can, at its most, be only a complementary power and as such cannot interfere with the inherent power of the court to administer its orders, judgments and decrees.

I believe that the reasoning used in Bridges v. Superior Court in and for Los Angeles County, 14 Cal.2d 464, 94 P.2d 983, 991, is somewhat comparable to the situation in this case in which the contemner contended that the legislature having prescribed and defined contempt and what the ingredients for contempt are the court held that regardless of the intent as expressed by the legislature, that the legislature could not take away from the court the power to punish violators of its orders, but intended rather to provide an additional remedy which should be used in a cumulative sense. I believe that the reasoning should be applied in the case at bar. The court having the inherent power to enforce its own orders through contempt proceedings and with this coercive power should enforce its orders without regard to the provisions made by the legislature which can only be cumulative. This I say advisedly because a bastardy proceeding is merely a civil action as the court has frequently held and is not an action for the punishment of the individual proceeded against but for the mere enforcement of the judgment for payment of money to the judgment creditor.

The high court of California held that the provisions of the statute dealing with contempt invaded the constitutional powers of the court and said: "That portion of section 1209 above quoted has many times been held unconstitutional on the ground that the courts have inherent power to punish for contempts, whether of a direct or constructive nature, and that the Legislature cannot constitutionally infringe on that power."

Appellants at the close of their brief contend that respondent having taken no appeal in the bastardy proceedings cannot attack said judgment in the habeas corpus proceedings and that there is no question but that the circuit court had jurisdiction over the parties. The trial court seems to have entered the judgment in conformity to the provisions of Ch. 295, S. D. Laws 1923, and it would further appear that the court must have followed the statutory provisions because later a body execution was issued. On the other hand if the court had elected to proceed to enforce and coerce its judgment an enquiry in the nature of a contempt trial as to respondent's disregard of the judgment would be necessary and such a proceeding would undoubtedly have shown the respondent's financial circumstances. It would, therefore, seem that the habeas corpus proceedings became an appropriate remedy for the contemner to use in questioning his incarceration. The record reveals that the contemner, in the habeas corpus proceedings, sought directly to question the constitutionality of the statute. Even though we might have held that the statute was constitutional and that secion 23 could only be complementary and could not add to the inherent power existing in the court it would seem that the habeas corpus proceedings are proper proceedings and may be used to question the incarceration of an individual in a contempt bastardy proceeding.

In Wangsness v. McAlpine, 47 S. D. 472, 199 N. W. 478, this court quoted at length from authorities with reference to when a writ of habeas corpus would lie and held that it would lie to test the constitutionality of a city ordinance under which a person had been convicted of a misdemeanor. The respondent in the case at bar questions the constitu-

tionality of the Uniform Illegitimacy act through habeas corpus proceedings which I believe is his right, and as was said by our court in Wangsness v. McAlpine, supra: "It would appear from these authorities, and we therefore hold, that habeas corpus will lie to test the constitutionality of the city ordinance under which the prisoner was convicted of a misdemeanor." Robertson v. State, 20 Ala. App. 514, 104 So. 561; People ex rel. Carlstrom v. Shurtleff, 355 Ill. 210, 189 N. E. 291; Ex parte Gerber, 83 Utah 441, 29 P.2d 932; People ex rel. Brewer v. Platzek, 133 App. Div. 25, 117 N. Y. S. 852; State ex rel. Thompson et al. v. Rutledge, 332 Mo. 603, 59 S. W.2d 641; Ex parte Bostwick, 102 Fla. 995, 136 So. 669; Ex parte Dickens, 162 Ala. 272, 50 So. 218.

I believe that the court was warranted, by the habeas corpus proceedings in determining the lawfulness of the contemner's imprisonment and that the showing made before the court was sufficient to satisfy the court that he was unable to obtain a bond or in any other way satisfy the judgment and that, therefore, he was entitled to his release not by waiting one year but upon the court's inherent power and pursuant to SDC 37.5504.

The judgment of the circuit court should be affirmed.