SUE LIVERMORE, Appellee, v. NILE LIVERMORE, Appellant.

No. 46189.

1156

Edward J. Dahms and Jordan & Jordan, all of Cedar Rapids, for appellant.

Yessler, Liddle & Fahey, W. L. Fahey, and B. T. Perrine, all of Cedar Rapids, for appellee.

MILLER, J.—Plaintiff's petition, filed August 13, 1941, asserts she and the defendant were married June 21, 1934; they lived together as husband and wife until about February 1, 1939; thereafter defendant commenced proceedings for a divorce; a stipulation of settlement was entered into relative to property rights; on May 23, 1939, a decree of divorce was entered; on October 9, 1939, a son was born to plaintiff; defendant is its father; the hospital expense was $40, that of the attending physician $25, both of which are reasonable. The prayer was that the court establish the paternity of the child in the defendant, enter judgment against defendant for $65 hospital and medical expense and $20 per month for the support of the child.

Defendant's answer admitted the entry of the decree of divorce, denied other allegations of the petition, asserted that defendant was absent from his wife for more than a year preceding the divorce, had no access to or marital relations with plaintiff during that time, that plaintiff repeatedly admitted that she had had sexual relations with a man other than defendant and that he rather than defendant was the father of the child. The prayer of the answer was that the action be dismissed.

Trial was had to a jury. Plaintiff testified that she and defendant were married in June 1934; they had one son, six years

old at the time of the trial herein; during the last year of their married life defendant told plaintiff he had another woman and wanted a divorce; on January 6, 1939, defendant and plaintiff spent the night together and had relations as man and wife; in February 1939, plaintiff learned that she was pregnant; a divorce was granted defendant herein in May 1939; on October 9, 1939, a son was born to plaintiff; the hospital bill was $59, the doctor's bill was $25; from the time of her marriage in 1934 to the birth of the child, plaintiff had no relations at any time with anyone other than her husband, defendant herein; between July 1938 and the date the divorce was granted, May 1939, the only time she had sexual relations with defendant was January 6, 1939. Plaintiff admitted on cross-examination that, at the time of the divorce, she stated in her attorney's office that the child she was then expecting was not defendant's child. The child, two and a half years old at the time of trial, was exhibited to the jury. Plaintiff's mother corroborated her testimony to the effect that plaintiff and defendant spent the night together on January 6, 1939; on cross-examination she testified that plaintiff stated, at the time of the divorce, that the expected child was not defendant's child, and that defendant at all times denied that it was his child.

At the close of plaintiff's evidence, defendant made a motion for directed verdict, asserting that the evidence of the plaintiff did not have sufficient probative force to warrant submitting the case to the jury or to sustain a verdict that defendant was the father of the child. The motion was overruled. It was not renewed at the close of the trial.

Defendant, as a witness in his own behalf, testified that he and plaintiff separated in May 1938; from that time on he was never alone with plaintiff; he was not with her at all on the night of January 6, 1939; he did not have sexual relations with plaintiff at any time after they separated in May 1938; he called at plaintiff's home thereafter every Saturday or so to leave groceries and money but took a friend with him each time and was not alone with plaintiff on such occasions; at the time of the divorce, there was a discussion of plaintiff's pregnant condition, those present being plaintiff, plaintiff's mother, plaintiff's

attorneys, defendant, defendant's mother, and defendant's attorney (now deceased), and plaintiff, in the presence of said persons, stated that another man, naming him, was responsible for her pregnant condition and that defendant was not; arrangements were made for the support of the son they then had, but no demand was made for any allowance for the unborn child; plaintiff said that she would look to the actual father of the child for that; plaintiff made no demand for any allowance for the child until in July 1941. On cross-examination defendant admitted that his verified petition for a divorce stated that he and plaintiff herein lived together until February 1939, but stated that he was unaware that such statement was in the petition. Defendant stated that he was willing to submit to a blood test.

Defendant's mother corroborated defendant's testimony concerning the conference held at the time of the divorce and that plaintiff herein then stated that the expected child's father was not defendant but another man, naming him; she also testified that she saw this man call at the home where plaintiff lived alone in 1938 and 1939; he "slipped down there" most any time, generally after dark; she did not see him leave during the daytime.

At the close of the testimony a blood test was made by an analytical technician and he was offered as a witness by both parties. His testimony described a number of blood tests made with specimens from plaintiff, defendant, and the child. The results were described in detail. The tests failed to rule out the possibility of defendant's being the father, failed to show that he was such without question, but were all consistent with the possibility of defendant's being its father. The jury returned a verdict that defendant was guilty as charged in the petition.

Defendant filed a motion for new trial and exceptions to the instructions. The motion for new trial asserted, among other things, that the verdict is contrary to the evidence, is not sustained by sufficient evidence, and is contrary to law; defendant has not had a fair trial; the court failed to instruct on the issues made by the pleadings; under the whole record, there has been an utter miscarriage of justice; upon the whole record, it was

the duty of the court to grant defendant a new trial. Exceptions were taken to instruction 5, relating to the presumption of legitimacy, instruction 7, relating to evidence of plaintiff's having relations with the man she had named as father of the child, instruction 10, relating to the evidence of blood tests. The motion for new trial and exceptions to the instructions were overruled. Defendant appeals, asserting nine assignments of error.

■ I. Five of defendant's assignments of error challenge the overruling of the motion for new trial; the first assignment on the ground that the verdict is not sustained by sufficient evidence; the second assignment on the ground that the verdict. is contrary to law; the fourth assignment on the ground that, upon the whole record, it was the duty of the court to grant a new trial; the fifth assignment on the ground that, upon the whole record, there has been an utter miscarriage of justice; the eighth assignment on the ground that the verdict is contrary to the evidence. All of these assignments are predicated upon one single contention of law and will therefore be considered together.

As above stated, at the close of plaintiff's evidence, defendant moved for a directed verdict on the ground that the evidence was insufficient to sustain a verdict that defendant was in fact the father of this child. This motion was overruled and was not renewed at the close of the evidence. Accordingly, the normal assumption would be that the grounds of the motion for new trial above reviewed were injected into the case for the purpose of supplying the defect caused by the failure to renew the motion for a directed verdict and that defendant's argument would be that the evidence of the plaintiff is unreasonable and unworthy of belief, that the jury placed too much emphasis on the presumption of legitimacy, was carried away by realization of the stark reality that a verdict for the defendant would brand this little child as one conceived in sin and condemned to live in disgrace, so that there was a miscarriage of justice due to an erroneous finding of fact that defendant is the father of the child. But no such contention is made and no such question of the sufficiency of the evidence is presented for our decision.

Defendant, in this court, concedes that, if this child was conceived while the mother was married, the presumption of legitimacy prevails, that the courts take judicial notice of the normal period of gestation, and that, as there is no dispute but that the time intervening between the date of the divorce and the birth of the child is less than the period of gestation, the presumption prevails. The only challenge is directed to the remedy sought. The contention made is stated in various ways, but the effect is the same in each instance. In the fifth assignment, it is asserted thus:

"It was error to refuse a new trial for the reason that the sole remedy and right of the plaintiff after the birth of a child conceived in wedlock was to apply to the court for a modification of the decree of divorce which had been granted against her. She would not have to establish that her child was legitimate, an almost conclusive presumption of law existed in her favor. Yet in this illegal proceeding the plaintiff was making an attempt to prove what the law had already presumed. She could not get in under the chapter of the Code 544, without first qualifying as being the mother of a child that was illegitimate, and if she was as she claimed the mother of a legitimate child, she could not come into court under the section of the Code that covered illegitimate children."

The plaintiff's answer to the foregoing proposition is that this question was not raised in the trial court, no attack was made on plaintiff's petition by motion, demurrer, or otherwise, questioning the legality of this action, and the question not having been properly raised in the trial court cannot be considered here. We are disposed to agree with the position taken by the plaintiff.

Defendant's contention asserts that the only remedy available to plaintiff is to reopen the divorce proceedings and that the provisions of chapter 544 of the Code are limited to cases involving illegitimate children. The reference to chapter 544 must be a typographical error. Chapter 544 of the Code, 1924, was repealed by chapter 81, section 38, Acts of the Forty-first General Assembly (1925), and what is now chapter 544.1, Code,

1939, was enacted in lieu thereof. While the code editor entitles this chapter "Paternity of Illegitimate Children and Obligation of Parents Thereto," the editor of the session laws entitled chapter 81, Acts of the Forty-first General Assembly, simply "Paternity." In neither case could the editorial title change, enlarge, or limit the statute.

Originally this chapter provided for proceedings. as in criminal cases and that, upon failure of the father to give security by bond for the payment of the judgment, the court might commit him to jail. In the case of State ex rel. Bissell v. Devore, 225 Iowa 815, 821, 281 N. W. 740, 743, 118 A. L. R. 1104, this court held that the proceedings constituted a civil suit and that the provisions for commitment to jail were unconstitutional, stating as follows:

"We are satisfied that the action brought in this case was a civil suit and that the defendant was exempt from punishment as in a criminal case, and we are constrained to hold that the judgment and order of the court imprisoning the defendant or finding him guilty of contempt was erroneous and such order or orders must be reversed. In so holding it is our finding and pronouncement that the sections of ch. 544-A1 [Code, 1935,] providing for punishment by commitment to jail or by commitment to a custodian or by commitment for contempt are in contravention of the Constitution of Iowa and absolutely void."

By chapter 246, Acts of the Forty-eighth General Assembly, 1939, the provisions which this court held to be unconstitutional were repealed and the procedure was revised so that it became a civil action. The statute, as so revised, appears as chapter 544.1, Code, 1939, and constitutes the statute under which plaintiff undertook to proceed herein.

Section 12667.01, Code, 1939, provides as follows:

"The parents of a child born out of wedlock and not legitimized (in this chapter referred to as 'the child') owe the child necessary maintenance, education, and support. They are also liable for the child's funeral expenses. The father is also liable to pay the expense of the mother's pregnancy and confinement. The obligation of the parent to support the child under the laws

for the support of poor relatives applies to children born out of wedlock.''

Section 12667.07 provides:

''Proceedings to establish paternity and to compel support by the father may be brought in accordance with the provisions of this chapter. They shall not be exclusive of other proceedings that may be available on principles of law and equity.''

Section 12667.10 provides:

''The action shall be by ordinary proceedings entitled in the name of the complainant against the defendant and shall be brought in the district court in the county in which the alleged father is permanently or temporarily resident, or in which the mother or the child resides or is found.''

Section 12667.15 provides:

''An original notice shall be issued as in other civil cases, which notice shall be served as in ordinary actions.''

Section 12667.18 provides:

''The trial shall be by jury, if either party demands a jury, otherwise by the court, and shall be conducted as in other civil cases.''

It is our holding that, in any event, section 12667.07 is sufficiently broad to authorize proceedings under chapter 544.1, Code, 1939, to establish the paternity of this child, in the absence of any objection to such procedure before the trial commenced.

In the case of Laumeier v. Laumeier, 237 N. Y. 357, 366, 143 N. E. 219, 222, 32 A. L. R. 654, 659, the parties were shown to have been divorced in Missouri. After the divorce a child was born to the former wife. Later she brought an action in New York against her former husband for the cost of maintenance of the child. The appellate division of the supreme court of New York dismissed the action. On appeal the court of appeals reversed, holding that a cause of action had been stated. Toward the end of the opinion the court states:

''The defendant in this action says that he is not the father

of the child, and he desires to litigate this issue. There is nothing to prevent him litigating it in this case. The plaintiff sues for the money which she has expended in his behalf in supporting his child, and the whole action is predicated upon the assumption that it is his child, and that the primary duty of supporting it rests upon him. If it be not his child, he, of course, is not under obligation to support it and the plaintiff cannot succeed. If the paternity of the young boy be an issue in this case, raised appropriately by the defendant's answer, it will be one of the issues to be determined in the action.''

Judge McLaughlin dissented on the ground that the Missouri court which awarded the divorce had sole jurisdiction to make an award for the support of the child. This contention has support in Harris v. Harris, 5 Kan. 46, and Ramsey v. Ramsey, 121 Ind. 215, 23 N. E. 69, 6 L. R. A. 682. Also, in Shannon v. Shannon, 97 Mo. App. 119, 71 S. W. 104, it was held that a wife might reopen divorce proceedings to secure an allowance for a child born after the divorce.

However, all of the foregoing cases recognize that a civil right may be asserted by a divorced wife for support of an after-born child. Such civil right is not disputed here. The question is solely one of procedure. Conceding, for the purpose of this case, that it would have been more appropriate to reopen the divorce proceedings to provide for an allowance such as that here sought, the question is whether that remedy is exclusive and whether this issue can be raised for the first time here.

As pointed out in In re Estate of Custer, 229 Iowa 1061, 1064, 295 N. W. 848, since the Revision of 1860 forms of action have been abolished and we have had one form of action known as a civil action, but proceedings may be of two kinds, ordinary or equitable. This court has held repeatedly that, where a civil action is brought but the wrong proceedings are selected, the court may nevertheless hear and decide the case if the form of proceedings be not challenged in accordance with chapter 484, Code, 1939. Section 10944 thereof provides:

''An error of the plaintiff as to the kind of proceedings adopted shall not cause the abatement or dismissal of the action,

1164

but merely a change into the proper proceedings, and a transfer to the proper docket.''

Section 10946 provides:

''The defendant may have the correction made by motion at or before the filing of his answer, where it appears by the provisions of this code wrong proceedings have been adopted.''

Section 10949 provides:

''An error as to the kind of proceedings adopted in the action is waived by a failure to move for its correction at the time and in the manner prescribed in this chapter * * *.''

As above stated, these statutes have been applied repeatedly. Baxter v. Baxter, 204 Iowa 1321, 217 N. W. 231; Patterson v. Bingham, 222 Iowa 107, 113, 268 N. W. 30, and cases cited therein.

Here we have a civil action to determine the paternity of a child. That paternity was vigorously contested at the trial by defendant but the appropriateness of the proceedings selected was not challenged until the case reached this court. Here the defendant seeks to execute a complete change of front. The paternity of the child is no longer contested but is now conceded. The form of proceedings alone is challenged. Plaintiff contends that such challenge cannot be made for the first time in this court. We agree with the plaintiff. We find no merit in defendant's first, second, fourth, fifth, and eighth assignments of error.

II. The other four assignments of error are based upon exceptions taken to the court's instructions. The exceptions were properly overruled.

The third assignment challenged the overruling of exceptions to instruction 5, which advised the jury that the presumption of legitimacy, applicable to a child born in lawful wedlock, was applicable herein and could not be ''overthrown by the assertion, however soundly made, by a putative father, that the child was not begotten by him. And, that presumption prevails, unless rebutted by competent and proper evidence.'' It may be that the instruction is a little unfortunate. The de-

nial of paternity·is some evidence that the presumption should not prevail. However, we think that the jury was not misled on the proposition that such denial alone is not sufficient to overcome the presumption and that other evidence is necessary.

The sixth assignment challenges the overruling of exception to instruction 7, which referred to evidence that the child was begotten by a man other than defendant. The contention is that the court did not emphasize that the burden of proof was on the plaintiff. This overlooks the effect of the presumption of legitimacy. In view of that presumption, the instruction was not prejudicial to defendant.

The seventh assignment challenges the overruling of exceptions to instruction 10, relating to the testimony of the blood tests. There is no merit in the contention. The ninth assignment asserts that the court did not instruct on all the issues, the contention being that the court should have told the jury that if they found the child to be legitimate they should find for the defendant because the remedy involved was not available for the benefit of a legitimate child. This contention is answered by Division I of this opinion.

We find no merit in the assignments of error herein. The judgment is—Affirmed.

All Justices concur.